IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35530-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| IMRA GREEN VAN WOLVELAERE, | ) | PUBLISHED OPINION |
| | ) | |
| Defendant, | ) | |
| | ) | |
| JULIA E. TUCKER, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — RCW 9A.56.065 makes it a class B felony to commit theft of a motor vehicle. In *State v. Barnes*, 189 Wn.2d 492, 403 P.3d 72 (2017), the lead and concurring opinions held that a riding lawn mower was not a "motor vehicle" for purposes of that statute. In so holding, six justices agreed that a "motor vehicle" was a car or other automobile. Because a snowmobile is not a car or other automobile, we reverse Julia Tucker's conviction for theft of a motor vehicle.

FACTS

In February 2016, Ms. Tucker and Imra Van Wolvelaere broke into a cabin near

Stampede Pass. The cabin was accessible only by snowmobiles. The pair stole several

items of personal property, including a snowmobile.

The State charged Ms. Tucker with residential burglary, second degree theft, theft

of motor vehicle, and third degree malicious mischief. A jury found Ms. Tucker guilty of

first degree criminal trespass and theft of motor vehicle, but could not reach a verdict on

the charge of second degree theft. The trial court declared a mistrial on that count, and it

later was dismissed without prejudice.

Defense counsel, relying on *Barnes*, filed a motion to arrest judgment on the theft

of a motor vehicle conviction. The trial court denied the motion on the ground that the

snowmobile was licensed and has a motor. Ms. Tucker timely appealed this aspect of her

conviction.

ANALYSIS

A.    THEFT OF MOTOR VEHICLE

RCW 9A.56.065 makes it a class B felony to commit theft of a motor vehicle. The

question before us is whether a snowmobile is a "motor vehicle" for purposes of this

statute. *Barnes* is dipositive, and the answer is no.

In *Barnes*, the court held that a riding lawn mower was not a "motor vehicle" for purposes of RCW 9A.56.065. *Barnes*, 189 Wn.2d at 498. The lead opinion, signed by three justices, resorted to the dictionary to define the meaning of "motor vehicle." *Id.* at 496. "Motor vehicle" was defined as "'an automotive vehicle not operated on rails; *esp[ecially]***:** one with rubber tires for use on highways.'" *Id.* (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1476 (2002)). "Automotive" was defined as "'relating to, or concerned with vehicles or machines that propel themselves (as automobiles, trucks, airplanes, motorboats).'" *Id.* (quoting WEBSTER'S, *supra*, at 148). The court stated, "In the context of [RCW 9A.56.065], these definitions contemplate cars and other automobiles designed for transport of people or cargo, but not machines designed for other purposes yet capable of transporting people or cargo." *Id.* at 496-97. The rest of the lead opinion explained the purpose of the "Elizabeth Nowak-Washington auto theft prevention act," which was to "curb[ ] the rising rate of auto thefts." *Id.* at 497; *see* LAWS OF 2007, ch. 199, § 29. The lead opinion concluded, "The plain meaning of 'motor vehicle' is clear. The legislature has explicitly indicated it intended to focus this statute on cars and other automobiles. It was responding to increased auto theft, not increased riding lawn mower theft." *Id.* at 498.

The concurring opinion, authored by Justice Wiggins, garnered the signatures of two other justices. *Id.* at 508 (Wiggins, J., concurring). Justice Wiggins first determined whether "motor vehicle" in the auto theft prevention act was clear or whether it was ambiguous. *Id.* at 499. He examined the title of the act, the enacted legislative findings and statements of intent, and the definitions of "motor vehicle theft," "motor vehicle," and "vehicle." *Id.* at 500-08. Justice Wiggins concluded that "motor vehicle" is an ambiguous phrase. *Id.* at 507.

Justice Wiggins next discussed the purpose of RCW 9A.56.065: "[T]he Washington legislature adopted the auto theft prevention act, including RCW 9A.56.065, to address increased car theft and the use of stolen cars in the commission of crimes." *Id.* at 507. He also noted that adopting a broad definition would raise a constitutional question because a broad definition would not conform to the narrow title of the act. *Id.* at 508. He then concluded:

> Thus, because the act's title refers to auto theft, because the legislature appeared concerned with addressing automobile theft in particular, and because a narrow reading avoids a constitutional dilemma, I conclude that theft of a motor vehicle does not include theft of a riding lawn mower.

*Id.*

4

Between the lead opinion and the concurring opinion, six justices concluded that "motor vehicle" was limited to cars and other automobiles, and did not include a riding lawn mower.[1]  Here, a snowmobile is not a car or other automobile.  To paraphrase the *Barnes* lead opinion, the legislature was responding to increased auto thefts, not increased snowmobile thefts.

The State argues that the stolen snowmobile should be classified as a motor vehicle because at the time and place it was stolen, a snowmobile was the only vehicle capable of transporting people or cargo.  But transporting people or cargo is not the touchstone agreed to by six justices.  The concurring justices never stated that transporting people or cargo was a relevant consideration.  Also, the lead and concurring justices also required the vehicle to be a car or other automobile.  A snowmobile obviously is not a car or other automobile.

Because a snowmobile is not a car or other automobile, we hold that a snowmobile is not a motor vehicle for purposes of RCW 9A.56.065.  We reverse Ms. Tucker's conviction for theft of motor vehicle and instruct the trial court to dismiss that conviction.

---

[1] The dissenting three justices construed "motor vehicle" broadly to include all motor vehicles, except those that would lead to absurd results, such as an "iRobot Roomba robotic vacuum."  *Id.* at 514.  (González, J., dissenting).

B.      CRIMINAL FILING FEE AND DEOXYRIBONUCLEIC (DNA) FEE

Ms. Tucker asks this court to strike her $200 criminal filing fee and her $100 DNA collection fee pursuant to the holding in *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018).

House Bill 1783, which became effective June 7, 2018, prohibits trial courts from imposing discretionary legal financial obligations (LFOs) on defendants who are indigent at the time of sentencing.  LAWS OF 2018, ch. 269, § 6(3); *Ramirez*, 191 Wn.2d at 738, 747.  This change to the criminal filing fee statute is now codified in RCW 36.18.020(2)(h).  As held in *Ramirez*, these changes to the criminal filing fee statute apply prospectively to cases pending direct appeal prior to June 7, 2018.  *Ramirez*, 191 Wn.2d at 747.  Accordingly, the change in law applies to Ms. Tucker's case.  Because Ms. Tucker is indigent, the criminal filing fee must be struck pursuant to *Ramirez*.

The change in law also prohibits imposition of the DNA collection fee when the State has previously collected the offender's DNA as a result of a prior conviction.  LAWS OF 2018, ch. 269, § 18.  The uncontested record establishes that Ms. Tucker has multiple Washington State felonies since 1990.  Since that time, Washington law has required defendants with a felony conviction to provide a DNA sample.  LAWS OF 1989,

No. 35530-6-III
*State v. Tucker*

ch. 350, § 4; RCW 43.43.754. Ms. Tucker's prior felonies give rise to a presumption that the State has previously collected a DNA sample from her. Because this issue was not raised below, we permit the State to rebut this presumption by offering contrary evidence on remand. Should the State fail to rebut the presumption, we direct the trial court to strike the DNA collection fee.

Reversed.

Lawrence-Berrey, C.J.

I CONCUR:

Siddoway, J.

7

No. 35530-6-III

KORSMO, J. (dissenting) — Just as a riding lawn mower is not a "motor vehicle," neither is it a snowmobile. The exclusion of lawn mowers from the definition of "motor vehicle" is not in play here. Julia Tucker stole a snowmobile and even operated it as a motor vehicle while doing so. She was properly charged with vehicle theft.

This dispute follows from the exception created by *State v. Barnes*, 189 Wn.2d 492, 403 P.3d 72 (2017). The trio of opinions, each representing the views of three justices, left us with a governing result (a riding lawn mower is not a "motor vehicle"), but not a governing rule. In my opinion, the majority errs when it concludes that *Barnes* defines what a "motor vehicle" is. All *Barnes* does is tell us that a riding lawn mower is not a "motor vehicle." It creates an exclusion, but not a definition.

The majority errs here by applying the *Barnes* concurrence instead of the lead opinion. Although necessary for the result, the concurrence does not speak for a majority of the court on the topic of whether a motorized vehicle is a "motor vehicle." The governing opinion is that of Justice Owens because it embodies the two significant majority conclusions of the case: (1) "motor vehicle" is a broad term covering mechanized vehicles (a view shared with Justice González); (2) the legislature did not intend to include riding lawn mowers in the statute (a view shared with Justice Wiggins).

In *Barnes*, the lead opinion by Justice Owens concluded that a riding lawn mower was a "motor vehicle," but was not one intended by the legislature to be included within the motor vehicle theft statute. *Id.* at 497-98. Similarly, the dissenting opinion of Justice González agreed with the lead opinion that the term "motor vehicle" was not ambiguous and that riding lawn mowers were motor vehicles. *Id.* at 508-10 (González, J., dissenting). In his view, the legislature intended a broad reading of the term "motor vehicle." *Id.* at 510-12. Only the concurring opinion of Justice Wiggins concluded that the term "motor vehicle" was ambiguous. *Id.* at 507 (Wiggins, J., concurring). He then determined that a riding lawn mower was not a motor vehicle; his conclusion stemmed in part from concerns about the title of the act creating the vehicle theft statute. *Id.* at 507-08.

Applying the first *Barnes* conclusion (above), I believe the answer to this case is to recognize that *Barnes* does not give us an affirmative answer, but suggests the approach we should take. Since there is not a controlling definition for "motor vehicle," we are free to consider other approaches in determining when a motorized vehicle should be excluded from the definition of "motor vehicle."[1] My suggestion is that we look at the vehicle's primary purpose to determine whether it is in or out of the statute. If the

---

[1] In the absence of a clear definition, we soon will be facing other challenges—semitrailers, motorcycles, pickup trucks, road graders, vans, electric vehicles that do not have motors, all-terrain vehicles, as well as farm vehicles such as tractors and combines—that are likely to line up in the trial courts.

2

primary purpose of the vehicle is to transport humans and/or their goods, it is a "motor

vehicle." If it is a vehicle primarily designed for other purposes such as to till fields or

mow the lawn, it is not a "motor vehicle." This, in fact, is the definition that Justice

Owens's lead opinion applies:

> In the context of this statute, these definitions contemplate cars and other automobiles designed for transport of people or cargo, but not machines designed for other purposes yet capable of transporting people or cargo.

*Id.* at 496-97. Noting that the definition "could conceivably include riding lawn

mowers," the opinion rejected that possibility because it was contrary to legislative intent.

*Id.* at 497. The primary purpose of the statute was to deter the theft of "cars and other

automobiles." *Id.* at 498.

Defining a "motor vehicle" in terms of the purpose behind its manufacture also

defines the phrase "cars and other automobiles" and answers the problem presented by

the alternative types of vehicles that exist. It also answers Ms. Tucker's case in

particular. A snowmobile is a self-propelled vehicle designed to transport humans across

the ground.[2] Ms. Tucker stole a "motor vehicle."[3]

---

[2] I have personally observed snowmobiles being used in lieu of automobiles for such purposes as commuting to school and going to the store to purchase food and beverages, as well as being used to bring doctors and nurses to work. In wintry climates, cars and snowmobiles serve the same purposes.

[3] Although not important to my analysis, I also note that Ms. Tucker used the snowmobile as a motor vehicle when she stole it and drove it down the forest road.

No. 35530-6-III
*State v. Tucker—Dissent*

The jury understandably concluded that the snowmobile was a "motor vehicle."

Thus, I conclude we should be affirming this conviction. I respectfully dissent from the

majority's contrary conclusion.

Korsmo, J.

4