FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
APRIL 30, 2020

*Stgnee, C. J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
APRIL 30,2020

*Susan L Carlson*
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Petitioner,<br><br>v.<br><br>IMRA GREEN VAN WOLVELAERE,<br><br>Defendant,<br><br>JULIA E. TUCKER,<br><br>Respondent. | NO. 97283-4<br><br>EN BANC<br><br>Filed <u>APRIL 30, 2020</u> |

GORDON McCLOUD, J.—Julia Tucker stole a snowmobile and was convicted of theft of a motor vehicle. On appeal, she argues that she could not have committed that crime because a snowmobile is not a motor vehicle under the relevant statute, RCW 9A.56.065.

In *State v. Barnes*, a fractured, 3-3-3 opinion, we held that a riding lawn mower is not a motor vehicle under that statute. 189 Wn.2d 492, 498, 403 P.3d 72 (2017) (lead opinion), 508 (Wiggins, J., concurring). Although the statutory language, when read in context and in accordance with our general rules of

interpretation, excludes riding lawn mowers, it unambiguously includes snowmobiles. We affirm Tucker's conviction.

FACTUAL AND PROCEDURAL BACKGROUND

The State accused Tucker[1] of stealing a snowmobile and charged her with theft of a motor vehicle. Clerk's Papers (CP) at 2.[2] A jury found her guilty. CP at 141. After trial, Tucker argued that she could not have committed the crime because a snowmobile is not a motor vehicle for purposes of the theft of a motor vehicle statute, RCW 9A.56.065. CP at 147-52. Observing that a snowmobile has a motor, is a vehicle, and unlike a lawn mower, must be licensed, the trial judge rejected Tucker's argument and sentenced her to 26 months. Tr. of Proceedings (TP) (May 26, 2017) at 341; TP (Aug. 18, 2017) at 366; *see also* CP at 209.

The Court of Appeals reversed. *State v. Van Wolvelaere*, 8 Wn. App. 2d 705, 440 P.3d 1005 (2019). Relying on our decision in *Barnes*, a majority of that court held that the statute criminalizes only theft of "a car or other automobile." *Id.* at 706-09.

---

[1] The State charged Imra Green Van Wolvelaere as a codefendant, Clerk's Papers at 1-2, but his case was resolved prior to trial, Tr. of Proceedings (Apr. 18, 2017) at 21, and he is not a party before us.

[2] The State also charged Tucker with residential burglary, theft in the second degree, and malicious mischief in the third degree. CP at 1-2. Only the theft of a motor vehicle charge is before us.

Judge Korsmo dissented. He would have distinguished *Barnes* on the ground that a snowmobile's "primary purpose" is "to transport humans and/or their goods," while a riding lawn mower's primary purpose is to "mow the lawn." *Id.* at 712 (Korsmo, J., dissenting).

We granted review, 194 Wn.2d 1008 (2019), and reverse.

ANALYSIS

We review this statutory interpretation issue de novo. *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010) (citing *In re Det. of Williams*, 147 Wn.2d 476, 486, 55 P.3d 597 (2002)). Our main goal is to "'determine the legislature's intent.'" *Id.* (quoting *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005)). The "surest indication" of that intent is "the text of the statutory provision in question, as well as 'the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.'" *Id.* (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002)). If the text and context is clear, we stop. *Id.* (citing *Campbell & Gwinn*, 146 Wn.2d at 9). Only if the text and context is unclear do we go further in our analysis. *Id.* (quoting *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007)).

I. The legislature defined "motor vehicle" as a self-propelled device that is capable of moving and transporting people or property on a public highway, and we are bound by that definition

To determine whether a snowmobile is a motor vehicle for purposes of the theft of a motor vehicle statute, we begin with the theft of a motor vehicle statute itself. That statute defines the crime as follows: "A person is guilty of theft of a motor vehicle if he or she commits theft of a motor vehicle." RCW 9A.56.065(1). The statute does not define "motor vehicle."

We therefore turn to the Washington Criminal Code's list of definitions; the legislature instructs us to use these definitions when interpreting a criminal statute "unless a different meaning plainly is required." RCW 9A.04.110. That list defines "vehicle" as "a 'motor vehicle' as defined in the vehicle and traffic laws, any aircraft, or any vessel equipped for propulsion by mechanical means or by sail." RCW 9A.04.110(29). So the Washington Criminal Code instructs us to proceed to the cross-referenced vehicle and traffic laws, located in Title 46 RCW (Motor Vehicles).[3]

---

[3] The three-justice lead opinion in *Barnes* declined to use the Washington Criminal Code's definition of "vehicle" and instead used a dictionary. 189 Wn.2d at 496-97. But the other opinions, signed by the remaining six justices, used the Washington Criminal Code's definition and followed its cross-reference to the vehicle and traffic laws. *Id.* at 504-05 (Wiggins, J., concurring), 509-10 (González, J., dissenting). This complies with the legislative directive to use the provided definitions, RCW 9A.04.110, and comports with our usual rules of statutory interpretation, *State v. Watson*, 146 Wn.2d 947, 954, 51 P.3d 66 (2002).

The vehicle and traffic laws define "motor vehicle" as "a vehicle that is self-propelled or a vehicle that is propelled by electric power obtained from overhead trolley wires but not operated upon rails." RCW 46.04.320(1).[4] "Vehicle" is further defined as a "device capable of being moved upon a public highway and in, upon, or by which any persons or property is or may be transported or drawn upon a public highway." RCW 46.04.670.[5] So a motor vehicle is a self-propelled device (a description of its mechanics) that is capable of moving and transporting people or property on a public highway (a description of its function).

Where, as here, the legislature has provided a definition, we are not free to create our own. *State v. Watson*, 146 Wn.2d 947, 954, 51 P.3d 66 (2002) ("Legislative definitions included in the statute are controlling." (citing *State v. Sullivan*, 143 Wn.2d 162, 175, 19 P.3d 1012 (2001))). The trial judge reasoned that a snowmobile is a motor vehicle in part because a snowmobile must be licensed (at least in some situations). TP (May 26, 2017) at 341. But the legislature's definition of "motor vehicle" says nothing about a licensing

---

[4] This statute has been amended since Tucker stole the snowmobile. *See* LAWS OF 2019, ch. 214, § 6. Since the changes don't affect our analysis, we use the current language in this opinion.

[5] This statute has also been amended since Tucker stole the snowmobile. *See id.*, ch. 170, § 2, ch. 214, § 7. These changes don't affect our analysis, either, so we use the current language here.

requirement. Although such a requirement may provide the courts with a useful test, we cannot simply create a new requirement out of thin air.

The dissenting judge's "primary purpose" test is closer to the mark. *See Van Wolvelaere*, 8 Wn. App. 2d at 712 (Korsmo, J., dissenting). Courts do have to analyze a device's function—that is, whether the device is capable of moving and transporting people or property on a public highway. But that function does not have to be the device's primary purpose.

In sum, the legislature has provided a definition of motor vehicle that requires us to analyze the device's mechanics (is it self-propelled?) as well as the device's function (is it capable of moving and transporting people or property on a public highway?).

II.     A "snowmobile" is a self-propelled device that is capable of moving and transporting people or property on a public highway

We must determine whether a snowmobile is a self-propelled device that is capable[6] of moving and transporting people or property on a public highway. Common sense informs us that a snowmobile is a self-propelled device. So do the vehicle and traffic laws to which the Washington Criminal Code refers us. Those laws explicitly define "snowmobile" as "'*a self-propelled vehicle* that is capable of

---

[6] "Capable" means "having sufficient power . . . or other needed attributes to perform or accomplish." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 330 (2002).

traveling over snow or ice." RCW 46.04.546 (emphasis added). And a snowmobile is obviously capable of transporting people or property.

The only remaining question is whether that self-propelled device is capable of moving and transporting people or property *on a public highway.*[7] That phrase limits the breadth of the "motor vehicle" definition. Some self-propelled devices are unquestionably able to move and to transport people or property on a public highway: cars, trucks, vans, motorcycles. Some clearly are not: boats, Jet Skis. For others, it's a closer call.

In *Barnes*, the lead opinion noted that riding lawn mowers are "designed for pruning grass," 189 Wn.2d at 497, and the concurrence found the definition of "motor vehicle" ambiguous as to riding lawn mowers in part because people generally don't operate them on public highways, *id.* at 506.[8] Similarly, people

---

[7] The legislature defines "highway" as "the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." RCW 46.04.197.

[8] The concurrence concluded that a riding lawn mower is not a "motor vehicle" under the statute. *Barnes*, 189 Wn.2d at 508. The concurrence relied in part on the doctrine of constitutional avoidance. *Id.* at 500-01, 508. According to the concurrence, the act's title, which refers to "auto theft," might violate our constitution's single-subject rule if riding lawn mowers fall within its bounds. *Id.* But the doctrine of constitutional avoidance is limited to those situations in which a statute is subject to more than one reasonable interpretation; in such a case, we will choose the reasonable interpretation that does not violate the constitution. *See State v. Abrams*, 163 Wn.2d 277, 282, 178 P.3d 1021 (2008). When a statute has but one reasonable interpretation, the courts "'cannot press statutory construction to the point of disingenuous evasion even to avoid a constitutional question.'" *Id.* (internal quotation marks omitted) (quoting *Miller v.*

7

generally don't operate snowmobiles, which are designed for use on snow and ice, on public highways.

But any ambiguity as to whether a snowmobile is capable of moving and transporting people or property on a public highway is dispelled by the snowmobile act. That act is located in chapter 46.10 RCW, right within Title 46 RCW[9]—the very title to which the definition of "vehicle" in the Washington Criminal Code, RCW 9A.04.110(29), cross-references us. The snowmobile act, RCW 46.10.470, not only makes clear that a snowmobile is capable of moving and transporting people or property on a public highway, at least when the highway is covered with snow or ice, but also makes clear that it is legally permitted to do so. The act specifically allows people "to operate a snowmobile *upon a public roadway or highway*" in the following four circumstances:

> Where such roadway or highway is completely covered with snow or ice and has been closed by the responsible governing body to motor vehicle traffic during the winter months; or

---

*French*, 530 U.S. 327, 341, 120 S. Ct. 2246, 147 L. Ed. 2d 326 (2000)); *see also Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212, 118 S. Ct. 1952, 141 L. Ed. 2d 215 (1998) ("'[T]he title of a statute . . . cannot limit the plain meaning of the text. For interpretive purposes, [it is] of use only when [it] shed[s] light on some ambiguous word or phrase." (alterations in original) (quoting *Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co.*, 331 U.S. 519, 528-29, 67 S. Ct. 1387, 91 L. Ed. 1646 (1947))). This statute has but one reasonable interpretation with respect to snowmobiles.

[9] Title 46 RCW is revealingly titled "Motor Vehicles."

>       When the responsible governing body gives notice that such roadway or highway is open to snowmobiles or all-terrain vehicle use; or

>       In an emergency during the period of time when and at locations where snow upon the roadway or highway renders such impassible to travel by automobile; or

>       When traveling along a designated snowmobile trail.

RCW 46.10.470 (emphasis added).  If a snowmobile were not capable of moving or transporting people or property on a public highway, then this statute would be meaningless.  What purpose would this law serve if a snowmobile were not even "capable of," RCW 46.04.670, taking advantage of the four listed circumstances?

Tucker argues that the first of the four circumstances in RCW 46.10.470, quoted above, suggests that a snowmobile is not a motor vehicle.  That circumstance provides that a person may operate a snowmobile on a public highway when that highway "has been closed by the responsible governing body to *motor vehicle* traffic during the winter months."  *Id.* (emphasis added).  If we were to zoom way in and isolate this one phrase of this one statute from the statutory scheme as a whole, then Tucker might have a point.  If a snowmobile is indeed a motor vehicle, then this circumstance could suggest that a person may operate a *motor vehicle* on a public highway when that highway is closed to *motor vehicles*.

But we don't interpret statutes in isolation.  We examine "'the context of the statute in which that provision is found, related provisions, and the statutory

9

scheme as a whole.'" *Ervin*, 169 Wn.2d at 820 (quoting *Campbell & Gwinn*, 146 Wn.2d at 9). Here, when we zoom out, it is clear and unambiguous that a snowmobile is a self-propelled device that is capable of moving and transporting people or property on a public highway—and is therefore a motor vehicle. The statutory language flagged by Tucker simply allows a person to operate one type of motor vehicle, a snowmobile, on a public highway when that highway is closed to the other types of motor vehicles that typically operate there. That is the only natural reading of the statutory scheme as a whole.

Further evidence that a snowmobile is a motor vehicle can be found in Title 82 RCW (Excise Taxes). Several statutes in Title 82 RCW cross-reference the same definition of "motor vehicle" as the Washington Criminal Code. *See* RCW 82.08.020(4); RCW 82.14.430(2)(c); RCW 82.80.100(1). But unlike the Washington Criminal Code, those statutes expressly exclude snowmobiles from the definition. *See* RCW 82.08.020(4)(d); RCW 82.14.430(2)(c)(iv); RCW 82.80.100(1). For example, RCW 82.80.100(1) says that "'motor vehicle' has the meaning provided in RCW 46.04.320, *but* does not include . . . snowmobiles as defined in RCW 46.04.546." (Emphasis added.) The "but" means that the definition of "motor vehicle" in Title 82 RCW is the same as the definition of "motor vehicle" in Title 46 RCW with one exception: Title 82 RCW's definition does not include snowmobiles. That means that Title 46 RCW's definition does.

10

Additionally, unlike other self-propelled devices that would otherwise seem to satisfy the definition of "motor vehicle," such as golf carts, the legislature did not expressly exclude snowmobiles from the statutory definition. *See* RCW 46.04.320(3) (excluding golf carts from the definition of "motor vehicle," except for purposes of chapter 46.61 RCW, but not snowmobiles). Since they are not expressly excluded from the definition, snowmobiles are, by implication, included within it. *See State v. Linville*, 191 Wn.2d 513, 520-21, 423 P.3d 842 (2018) (describing the statutory canon of construction known as "expressio unius est exclusio alterius").

Of course, the definition of "motor vehicle" is limited not only by the specific exclusions listed in the statute but also by other tools of statutory construction. For instance, "[w]e avoid a literal reading of a statute if it would result in unlikely, absurd, or strained consequences." *State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992) (citing *State v. Neher*, 112 Wn.2d 347, 351, 771 P.2d 330 (1989)). An absurd consequence is a consequence that "no reasonable person could approve" and that "the drafters could not have intended." BLACK'S LAW DICTIONARY 12 (11th ed. 2019) (see entries under "absurdity doctrine" and "absurdity"); *see also Ervin*, 169 Wn.2d at 823-24. "For example, it would be absurd to prosecute a person who stole an iRobot Roomba robotic vacuum with theft of a motor vehicle even though it is motorized and could be used to transport

11

small property." *Barnes*, 189 Wn.2d at 514 (González, J., dissenting). But it is not absurd to prosecute a person who stole a snowmobile for theft of a motor vehicle.

Although unnecessary to reach our conclusion, the facts of this case prove that a snowmobile is a self-propelled vehicle that is capable of transporting people on a public highway. Tucker and an accomplice took the snowmobile from a cabin that was inaccessible by car due to snow. TP (Apr. 18, 2017) at 62-64, 80. In fact, Tucker asserted a (failed) defense of necessity, arguing that she was lost and snowed-in and needed the snowmobile to reach "civilization." *Id.* at 141. Niel Nielsen, the cabin's owner, testified that during the winter, the main road to his cabin "becomes a snowmobile trail." *Id.* at 64. A county sheriff testified that the cabin was not accessible "by anything other than a snowmobile or walking," *id.* at 147, and that he "loaded up in a snow cat" to investigate the crime, *id.* at 110.

In sum, a snowmobile satisfies the definition of "motor vehicle" provided by the legislature.

III. The legislative findings and intent support the statute's plain, unambiguous language

The legislature enacted the theft of a motor vehicle statute in 2007 when it passed the Elizabeth Nowak-Washington auto theft prevention act. LAWS OF 2007, ch. 199, §§ 2, 29. In the act, the legislature included a list of findings and stated its intent. *Id.* §§ 1-2. Its findings and intent, "although without operative force in

[themselves], nevertheless serve[] as an important guide in understanding the intended effect of operative sections." *Hartman v. Wash. State Game Comm'n*, 85 Wn.2d 176, 179, 532 P.2d 614 (1975) (citing *State ex rel. Berry v. Superior Court*, 92 Wash. 16, 159 P. 92 (1916); *Whatcom County v. Langlie*, 40 Wn.2d 855, 246 P.2d 836 (1952)).

A. The legislature's stated intent was to deter motor vehicle theft

The findings and intent sections support our holding that a snowmobile is a motor vehicle. From the intent section, we see that the legislature was concerned with theft of motor vehicles in general:

> It is the intent of this act to deter *motor vehicle* theft through a statewide cooperative effort by combating *motor vehicle* theft through tough laws, supporting law enforcement activities, improving enforcement and administration, effective prosecution, public awareness, and meaningful treatment for first time offenders where appropriate. It is also the intent of the legislature to ensure that adequate funding is provided to implement this act in order for real, observable reductions in the number of auto thefts in Washington state.

LAWS OF 2007, ch. 199, § 2 (emphasis added).

Although the legislature intended to deter motor vehicle theft generally, its list of findings suggest that it was particularly concerned with theft of the family car and other autos specifically. For example, the legislature stated,

> Automobiles are an essential part of our everyday lives. The west coast is the only region of the United States with an increase of over three percent in motor vehicle thefts over the last several years. The family car is a priority of most individuals and families. The family car is

13

> typically the second largest investment a person has next to the home, so when a car is stolen, it causes a significant loss and inconvenience to people, imposes financial hardship, and negatively impacts their work, school, and personal activities. Appropriate and meaningful penalties that are proportionate to the crime committed must be imposed on those who steal motor vehicles.

*Id.* § 1(a). The legislature also discussed the high rates of auto theft in the central Puget Sound region, *id.* § 1(b), the correlation between auto theft and other crimes such as burglary, *id.* § 1(c), the need to address auto theft by imposing appropriate sentences, *id.* § 1(d), and the need for strict enforcement, *id.* § 1(e).

But the legislative findings address more than just auto theft. They show that the legislature was concerned about theft of other types of vehicles, too. *See id.* § 1(a) ("Appropriate and meaningful penalties that are proportionate to the crime committed must be imposed on those who steal *motor vehicles*." (emphasis added)), (e) ("A coordinated and concentrated enforcement mechanism is critical to an effective statewide offensive against *motor vehicle* theft." (emphasis added)). Indeed, the legislature's explicit intent was to "deter *motor vehicle* theft through a statewide cooperative effort by combating *motor vehicle* theft through tough laws . . . ." *Id.* § 2.

Crucially, the legislature followed through with its explicit intent when it explicitly criminalized theft of a motor vehicle—not theft of a car, theft of a family car, or theft of an automobile. RCW 9A.56.065(1) ("A person is guilty of theft of

a *motor vehicle* if he or she commits theft of a *motor vehicle*." (emphasis added)).[10]

That category is bigger than cars and other automobiles.

Finally, we note that a snowmobile is more akin to a passenger vehicle or family car than a riding lawn mower is. As described above, the cabin from which Tucker stole the snowmobile was inaccessible by car; a person had to either walk or drive a snowmobile up the main road for access. TP (Apr. 18, 2017) at 147. And as the dissenting judge observed, people in some parts of our state depend on snowmobiles "in lieu of automobiles" for everyday purposes. *Van Wolvelaere*, 8 Wn. App. 2d at 712 n.3. For these Washingtonians, a stolen snowmobile, no less than a stolen car, "causes a significant loss and inconvenience . . . , imposes financial hardship, and negatively impacts their work, school, and personal activities." LAWS OF 2007, ch. 199, § 1(a).[11]

---

[10] Notably, the legislature used different language elsewhere in the same chapter of the RCW. For example, a "person is guilty of taking a motor vehicle without permission in the first degree if he or she, without the permission of the owner or person entitled to possession, intentionally takes or drives away an *automobile or motor vehicle* . . . ." RCW 9A.56.070 (emphasis added); *see also* RCW 9A.56.075(1) (using same phrase but substituting second degree for first degree). If the legislature wanted to criminalize theft of only cars and other automobiles, presumably it would have used the term "automobile" rather than "motor vehicle."

[11] The legislature also found that "[m]any stolen vehicles are used by criminals involved in such crimes as robbery, burglary, and assault." LAWS OF 2007, ch. 199, § 1(c). The lead opinion in *Barnes* observed that a riding lawn mower could not "reasonably be used for a later robbery, burglary, or assault." 189 Wn.2d at 498. But a snowmobile can. Indeed, Tucker and her accomplice were accused of burglarizing a residence and fleeing on a stolen snowmobile. CP at 1-2; TP (Apr. 19, 2017) at 284-87.

B. The legislature's particular concern with auto theft does not change the fact that it criminalized motor vehicle theft generally

If the definition of "motor vehicle" were ambiguous as to snowmobiles, then the legislature's findings and intent might help resolve that ambiguity. *See Barnes*, 189 Wn.2d at 503, 507-08 (Wiggins, J., concurring) (relying in part on legislative findings to resolve statutory ambiguity); *cf.* 497 (lead opinion) (relying in part on legislative findings to determine meaning of motor vehicle).[12]  But a list of findings and a stated intent cannot override an otherwise unambiguous statute. *State ex rel. Berry*, 92 Wash. at 32; *see also In re Bale*, 63 Wn.2d 83, 87, 385 P.2d 545 (1963) (explaining that an act's preamble is "not controlling, and must be read in context with the specific statute before us").  A court may not "rel[y] on a statement of legislative intent to override the unambiguous elements section of a

---

The jury found Tucker not guilty of residential burglary but guilty of the lesser offense of first degree criminal trespass.  CP at 140.

[12] If the language were ambiguous, then other interpretive rules would apply also. *State v. Weatherwax*, 188 Wn.2d 139, 155, 392 P.3d 1054 (2017) ("[T]he rule of lenity requires us to interpret the statute strictly in favor of the defendant." (citing *State v. Conover*, 183 Wn.2d 706, 712, 355 P.3d 1093 (2015))); *see also United States v. Davis*, __ U.S. __, 139 S. Ct. 2319, 2333, 204 L. Ed. 2d 757 (2019) ("[The rule of lenity] is founded on 'the tenderness of the law for the rights of individuals' to fair notice of the law 'and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department.'" (quoting *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95, 5 L. Ed. 37 (1820))); Zachary Price, *The Rule of Lenity as a Rule of Structure*, 72 FORDHAM L. REV. 885 (2004) (arguing that a robust rule of lenity enhances government transparency and accountability).

penal statute or to add an element not found there." *State v. Alvarez*, 74 Wn. App. 250, 258, 872 P.2d 1123 (1994), *aff'd*, 128 Wn.2d 1, 904 P.2d 754 (1995).

Take *Alvarez* for example. There, Alvarez was convicted of two counts of harassment in violation of the Anti-Harassment Act of 1985, former RCW 9A.46.020 (1992). *Alvarez*, 128 Wn.2d at 4-6. Alvarez argued that "because he did not *repeatedly* invade his victim's privacy or engage in any 'pattern of harassment,' his conduct was not intended by the Legislature to be made criminal under the anti-harassment act." *Id.* at 10. The statute he was convicted of violating said nothing about repeated invasions of privacy or patterns of harassment. *Id.* (quoting former RCW 9A.46.020). But Alvarez argued that the statute "must be read with the legislative finding." *Id.* at 11 (citing RCW 9A.46.010). Unlike the operative statute, the legislative finding *did* mention repeated invasions of privacy and patterns of harassment. *Id.* (quoting RCW 9A.46.010).

We rejected Alvarez's argument:

Although the legislative finding in RCW 9A.46.010 indicates the Legislature intended to make criminal "repeated invasions of a person's privacy" by acts and threats showing a "pattern of harassment," this does not lead to a conclusion that a single act of harassment may not be charged under the act. Harassment is defined under RCW 9A.46.020. Nothing in that section indicates a legislative intent to criminalize only invasion of privacy by repeated acts and threats showing a pattern of harassment.

17

*Id.* at 12.

*Alvarez* is directly on point. Here, the legislative findings and stated intent suggest that the legislature was concerned primarily with auto theft—but that does not lead to a conclusion that theft of other motor vehicles may not be charged under the operative statute. Nothing in the operative statute indicates a legislative intent to criminalize only theft of cars or other automobiles. The statute criminalizes theft of a motor vehicle. RCW 9A.56.065. Motor vehicle is defined by the legislature. RCW 9A.04.110(29); RCW 46.04.320. And the legislature's definition includes snowmobiles.

## CONCLUSION

A snowmobile is a "motor vehicle" for purposes of RCW 9A.56.065. Accordingly, we reverse the Court of Appeals and affirm Tucker's conviction.

_____
Gordon McCloud, J.

WE CONCUR:


_____          _____
                                           González, J.


_____          _____
                                           Yu, J.
Owens, J.                                  Montoya-Lewis, J.

*State v. Van Wolvelaere (Imra); Tucker (Julia)*

No. 97283-4

MADSEN, J. (dissenting)—The majority holds that "the statutory language [of RCW 9A.56.065], when read in context . . . unambiguously includes snowmobiles."[1] Majority at 1-2. I disagree. The plain language of RCW 9A.56.065 does not mention snowmobiles, and in light of the context of the statute, including the legislature's express statement of intent in enacting this statute to address auto theft, I must dissent.

In my view, for the reasons discussed below, the Court of Appeals' majority correctly applied the lead and concurring opinions in *State v. Barnes*, 189 Wn.2d 492, 403 P.3d 72 (2017) (a case involving theft of a riding lawn mower), in holding that because a snowmobile is not a car or other automobile, a snowmobile does not qualify as a motor vehicle for purposes of RCW 9A.56.065. The majority here implies that the lead opinion in *Barnes* erred in relying on the legislature's stated intent in enacting the statute in question. *See* majority at 4 n.3. I disagree. "In construing a statute, the fundamental objective is to ascertain and carry out the . . . legislature's intent." *State v. Evergreen*

---

[1] The statute provides: "A person is guilty of theft of a motor vehicle if he or she commits theft of a motor vehicle." RCW 9A.56.065(1).

*Freedom Found.*, 192 Wn.2d 782, 789, 432 P.3d 805 (citing *Lake v. Woodcreek Homeowners Ass'n,* 169 Wn.2d 516, 526, 243 P.3d 1283 (2010)), *cert. denied*, 139 S. Ct. 2647 (2019). "This court looks to the entire "'context of the statute in which the provision is found, [as well as] related provisions, amendments to the provision, and the statutory scheme as a whole.'"" *Id*. (alteration in original) (quoting *State v. Conover*, 183 Wn.2d 706, 711, 355 P.3d 1093 (2015) (quoting *Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd.*, 182 Wn.2d 342, 350, 340 P.3d 849 (2015))).

> "The meaning of words in a statute is not gleaned from [the] words alone but from 'all the terms and provisions of the act in relation to the subject of the legislation, the nature of the act, the general object to be accomplished and consequences that would result from construing the particular statute in one way or another.'"

*Id.* at 790 (quoting *Burns v. City of Seattle*, 161 Wn.2d 129, 146, 164 P.3d 475 (2007) (quoting *State v. Krall*, 125 Wn.2d 146, 148, 881 P.2d 1040 (1994))); *see also Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002) (clarifying that "plain meaning" is "discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question"); *Evergreen Freedom Found.*, 192 Wn.2d at 790 (so noting).

Of particular relevance here, this court has determined that an "'enacted statement of legislative purpose is included in a plain reading of a statute.'" *Evergreen Freedom Found.*, 192 Wn.2d at 790 (quoting *G-P Gypsum Corp. v. Dep't of Revenue*, 169 Wn.2d 304, 310, 237 P.3d 256 (2010)). Both the lead and concurring opinions in *Barnes* (six justices) looked to the legislature's findings and statement of intent included in the act

promulgating the statute in question here, RCW 9A.56.065. *See Barnes*, 189 Wn.2d at 497 (noting the act's express short title is "'the Elizabeth Nowak-Washington auto theft prevention act'" (quoting Laws of 2007, ch. 199, § 29) and noting the legislature's findings and the act's "explicit purpose of curbing the rising rate of auto thefts"); *see also id.* at 499 & n.1 (Wiggins, J., concurring) (relying on the act's short title, and "the legislature's stated intent in light of the circumstances in which the statute was passed").[2]

As the lead opinion in *Barnes* correctly explained,

> Here, RCW 9A.56.065 does not explicitly define "motor vehicle." Both parties suggest we use the term "vehicle" as defined in RCW 9A.04.110(29), using by reference the definition of "motor vehicle" in our vehicle and transport laws. RCW 46.04.320, .670. However, we decline to do so. The legislature chose not to define "motor vehicle" in our theft statutes. Because the term is undefined, we give it its plain and ordinary meaning as ascertained from a standard English dictionary. [*State v.*] *Fuentes*, 183 Wn.2d [149,] 160[, 352 P.3d 152 (2015)].

*Id.* at 496. The footnote following this passage further explained,

> The dissent argues that we should apply the definition of "vehicle" from RCW 9A.04.110(29) because a "motor vehicle" is always also a "vehicle." Dissent at 510-11. But even identical terms can have different meanings in different parts of a single statute. *Yates v. United States*, [574] U.S. [528, 537], 135 S. Ct. 1074, 1082, 191 L. Ed. 2d 64 (2015). Here, we are confronted with two slightly different terms: "motor vehicle" in RCW

---

[2] "A principle of law reached by a majority of the court, even in a fractured opinion, is not considered a plurality but rather binding precedent." *In re Det. of Reyes*, 184 Wn.2d 340, 346, 358 P.3d 394 (2015) (citing *Wright v. Terrell*, 162 Wn.2d 192, 195-96, 170 P.3d 570 (2007) (per curiam)). Under the federal rule, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" *Marks v. United States*, 430 U.S. 188, 193, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976) (plurality opinion)); *see also King County v. Vinci Constr. Grands Projets/Parsons RCI/Frontier-Kemper, JV*, 188 Wn.2d 618, 644, 398 P.3d 1093 (2017) (discussing *Marks*) (Madsen, J., concurring in dissent).

> 9A.56.065, the theft statute under which Barnes was prosecuted, and "vehicle" in RCW 9A.04.110(29), the catchall definitional statute. The legislature enacted the catchall definition over 30 years before it enacted the theft statute. LAWS OF 2007, ch. 199, § 29 (enacting RCW 9A.56.065); LAWS OF 1975, 1st Ex. Sess., ch. 260, § 9A.04.110 (enacting definition of "vehicle" now codified at RCW 9A.04.110(29)). And when it enacted the theft statute, in 2007, it simultaneously codified a statement of findings and intent that equates "motor vehicles" with cars. . . . Given this context, we decline to equate "motor vehicle" in RCW 9A.56.065 with "vehicle" in the catchall definitional statute.

*Id*. at 496 n.1. This was not error. As the *Barnes* concurrence correctly observed, "If our 'paramount duty in statutory interpretation' truly is 'to give effect to the Legislature's intent,' then surely we must consider duly enacted legislative statements of intent as part of the statutory text." *Id*. at 505 n.4 (Wiggins, J., concurring) (quoting *State v. Elgin*, 118 Wn.2d 551, 555, 825 P.2d 314 (1992)). I agree and reiterate that this court has repeatedly determined that an "'enacted statement of legislative purpose is included in a plain reading of a statute.'" *Evergreen Freedom Found.*, 192 Wn.2d at 790 (quoting *G-P Gypsum Corp.*, 169 Wn.2d at 310).

Further, as the majority acknowledges, the statute containing catchall definitions, by its terms, is to be applied "'unless a different meaning plainly is required.'" Majority at 4 (quoting RCW 9A.04.110). In my view, where the legislature has enacted legislation to expressly address "auto theft," such explicit statement of specific intent plainly requires application of the express intent that the legislature provided. As the *Barnes* concurrence noted, "if our true aim in statutory interpretation is to ascertain and carry out the legislative intent, a clear answer emerges from this context. The legislature intended to punish and deter theft of automobiles according to the acknowledged impact of this

No. 97283-4
Madsen, J., dissenting

crime on the lives of Washingtonians." *Barnes*, 189 Wn.2d at 508 (Wiggins, J.,

concurring).

Aside from the appropriateness of relying on express legislative intent as

discussed above, in the present case, extrapolating from language found in other statutes

is not even helpful. For instance, RCW 9A.56.075(1), on which the State and the

majority rely, provides:

> A person is guilty of taking a motor vehicle without permission in the
> second degree if he or she, without the permission of the owner or person
> entitled to possession, intentionally takes or drives away *any automobile or
> motor vehicle*, whether propelled by steam, electricity, or internal
> combustion engine, that is the property of another, or he or she voluntarily
> rides in or upon *the automobile or motor vehicle* with knowledge of the fact
> that *the automobile or motor vehicle* was unlawfully taken.

(Emphasis added.) The use of the phrase "automobile *or* motor vehicle" in this statute

suggests that the term motor vehicle is broader in scope and refers to more than just cars.

On the other hand, RCW 46.10.470, which expressly applies to snowmobiles, provides in

relevant part that "it shall be lawful to operate a *snowmobile* upon a public roadway or

highway . . . [w]here such roadway or highway is completely covered with snow or ice

and has been *closed* by the responsible governing body *to motor vehicle traffic* during the

winter months."[3]  (Emphasis added.)  This language appears to distinguish snowmobiles

as separate and distinct from motor vehicles. Accordingly, these statutes and their

incongruities are not very helpful here.[4]

---

[3] In other words, under this statute, a snowmobile can be used on a public highway only when
the highway itself has been closed and is not being used as a highway.
[4] The majority bolsters its reliance on such statutory definitions by asserting that in *Barnes* six
justices "used the Washington Criminal Code's definition and followed its cross-reference to the

5

Further, the State also argued, in part, that "[t]o hold that a snowmobile is not a motor vehicle would deny the protection of the laws against taking motor vehicles to those families who depend upon a snowmobile to access their homes or to secure necessary food and supplies during the winter months." State's Pet. for Review at 6. The majority agrees with that view. *See* majority at 15. But such policy arguments concerning why the definition of motor vehicle should include snowmobiles would be better made to the legislature, which has not amended the theft of a motor vehicle statute since our opinion in *Barnes*.

The majority relies on *State v. Alvarez*, 128 Wn.2d 1, 904 P.2d 754 (1995), for the notion that a statement of legislative intent cannot be applied to add to or contradict an unambiguous statute. *See* majority at 16-18. In my view, the majority's reliance on *Alvarez* is misplaced. In that case, the statute in question (RCW 9A.46.020) was clear, but that is not the circumstance here. As this court explained in *Alvarez*,

> In interpreting statutory provisions, "[t]he fundamental objective . . . is to ascertain and carry out the intent of the Legislature." It is evident that "*if* a statute is unambiguous, its meaning must be derived from its actual language. If the language is not ambiguous, there is no need for judicial interpretation. *Words are given the meaning provided by the statute or, in the absence of specific definition, their ordinary meaning*."

---

vehicle and traffic laws." Majority at 4 n.3. While I acknowledge that the *Barnes* concurrence discussed the definition of "vehicle" found in RCW 9A.04.110(29) and RCW 46.04.670, and "motor vehicle" as defined outside of the criminal statutes, the concurrence determined these general definitions were unhelpful in applying RCW 9A.56.065, the same statute that we consider here. *See Barnes*, 189 Wn.2d at 506-07 (Wiggins, J., concurring). In my view, the general definitions that the majority relies on are equally unhelpful in the present context, and they do not comport with the legislature's express statement of intent in enacting RCW 9A.56.065.

6

128 Wn.2d at 11-12 (emphasis added) (internal quotation marks and footnote omitted) (quoting *Rozner v. City of Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991); *State v. Smith*, 117 Wn.2d 263, 270-71, 814 P.2d 652 (1991)).

Here, the circular language of RCW 9A.56.065 is wholly unhelpful as to what constitutes a motor vehicle to which the theft statute applies. And, as *Barnes* demonstrates, the various definitions of vehicle and motor vehicle found in the traffic and other laws does not offer sufficient clarity in the present circumstance. Accordingly, here it is appropriate to rely on the legislature's express statement of intent in applying RCW 9A.56.065.

In the present case, the definitional statutes relied on by the majority do not answer the pertinent question: Is a snowmobile a motor vehicle for purposes of the theft of a motor vehicle statute, RCW 9A.56.065? The definitional statutes relied on by the majority demonstrate that motor vehicle means different things in different circumstances, but together they get us no closer to determining whether in enacting the theft of a motor vehicle statute, the legislature intended that the statute apply to the theft of a snowmobile. In this circumstance, we should rely on the express statement of legislative intent regarding the purpose of the act containing the statute in question. Relying on that express statement of intent, we have already determined that the motor vehicle theft statute applies to automobiles, and we should hold the same here. Accordingly, I dissent.

_Madsen, J._

_Johnson, J._

_Stephens, C.J._

_Wiggins, J.P.T._