# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54673-6-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JODIE LEE DEAN,<br> AKA<br> JODY LEE DEAN<br> VINCENT RAY DEAN<br> VINCENT RAY MOLZAN | |
| Appellant. | |

MAXA, J. – Jodie Dean appeals his conviction for second degree burglary. The conviction arose from an incident in which Dean and others entered a construction company's fenced storage yard and attempted to load a large crane block onto their vehicle.

A person can be convicted of second degree burglary if he or she enters or remains unlawfully in a "building." RCW 9A.52.030(1). The definition of "building" includes "any . . . fenced area." RCW 9A.04.110(5).

Dean argues that there is insufficient evidence to support his conviction because the fenced construction yard that he entered did not qualify as a "building." He claims that a fenced area constitutes a building for purposes of RCW 9A.52.030(1) only if the fence surrounds the curtilage of a building.

We hold that there was sufficient evidence that the Atkinson Construction storage yard constituted a "fenced area" under RCW 9A.04.110(5) because fencing completely enclosed the yard. Therefore, we affirm Dean's conviction of second degree burglary.

## FACTS

Atkinson Construction owned a storage yard in Tacoma. A chain link fence that was six to eight feet high completely enclosed the yard. Inside the yard were several storage containers referred to as "[c]onexes." 3 Report of Proceedings at 3779. The conexes were 8 foot by 20 foot storage containers. At least two of the conexes had wooden roofs on top of them.

On July 9, 2019 at approximately 6:00 AM, Dean and two other men were apprehended near a hole in the fence that surrounded the Atkinson Construction storage yard. It appeared that the men had dragged a large crane hook from the storage yard through the hole in the fence and were attempting to load it onto a truck. The State charged Dean with second degree burglary.

At trial, the trial court instructed the jury that a person commits second degree burglary when he or she enters or remains unlawfully in a building. Another jury instruction stated, "Building, in addition to its ordinary meaning, includes any fenced area." Clerk's Papers at 26.

A jury found Dean guilty of second degree burglary. Dean appeals his conviction.

## ANALYSIS

Dean argues that there was insufficient evidence to convict him of second degree burglary because a fenced area that contains no buildings and is not part of the curtilage of a building cannot constitute a "building" for purposes of the second degree burglary statute. He asserts that the fenced Atkinson Construction storage yard could not constitute a "building" because there were no buildings inside the fenced area. We disagree.

A.    LEGAL PRINCIPLES

    1.    Standard of Review

The test for determining sufficiency of evidence is whether any rational trier of fact could find the elements of the charged crime beyond a reasonable doubt after viewing the evidence in a light most favorable to the State. *State v. Dreewes*, 192 Wn.2d 812, 821, 432 P.3d 795 (2019). We resolve all reasonable inferences based on the evidence in favor of the State and interpret inferences most strongly against the defendant. *Id.* at 822. The State's evidence is admitted as true, and circumstantial evidence is considered as equally reliable as direct evidence. *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019), *cert. denied*, 140 S. Ct. 834 (2020).

    2.    Statutory Interpretation

We review questions of statutory interpretation de novo. *State v. Wolvelaere*, 195 Wn.2d 597, 600, 461 P.3d 1173 (2020). The primary goal of statutory interpretation is to ascertain and give effect to the legislature's intent. *Id.* This requires looking at the plain language of the statute, the context of the statute, any related statutory provisions, and the statutory scheme as a whole. *Id.* If the plain meaning of the statute is unambiguous, we apply that meaning. *Id.*

If the plain language of the statute is susceptible to more than one reasonable interpretation, the statute is ambiguous. *State v. Brown*, 194 Wn.2d 972, 976, 454 P.3d 870 (2019). We first attempt to resolve the ambiguity and determine the legislature's intent by considering other indicia of legislative intent, including principles of statutory construction, legislative history, and relevant case law. *Id.* If these indications are insufficient to resolve the ambiguity, the rule of lenity requires that we interpret the ambiguous statute in favor of the defendant. *State v. Lake*, 13 Wn. App. 2d 773, 777, 466 P.3d 1152 (2020).

3. Meaning of "Fenced Area"

As noted above, RCW 9A.52.030(1) states that a person is guilty of second degree burglary "if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building." RCW 9A.04.110(5) states, " 'Building' in addition to its ordinary meaning, includes any dwelling, *fenced area*, vehicle, railway car, cargo container, or any other structure used for lodging of persons or for carrying on business therein, or for the use, sale, or deposit of goods." (Emphasis added.) The trial court's jury instruction informed the jury that a building included a fenced area.

The term "fenced area" has no statutory definition. *State v. Wentz*, 149 Wn.2d 342, 352, 68 P.3d 282 (2003). In *Wentz*, the defendant entered the backyard of a house that was completely surrounded by a fence with locked gates by climbing the fence. *Id.* at 345. The court held that there was sufficient evidence to sustain the defendant's conviction because "[t]he ordinary meaning of 'fenced area' clearly encompasses the backyard in this case." *Id.* at 352.

In *State v. Engel*, the defendant entered a large business premises with a yard area that included several buildings to steal aluminum auto wheels. 166 Wn.2d 572, 574-75, 210 P.3d 1007 (2009). One-third of the premises was fenced with a chain link fence, but the rest of the property was not fenced. *Id.* at 575-76. On the borders of the unfenced portion of the property were high banks and sloping banks. *Id.* at 575. The defendant argued that a "fenced area" was limited to an area totally enclosed by a fence. *Id.* at 578. The State argued that "fenced area" included a partially fenced area where topography and other barriers closed off the area to the public. *Id.*

The court held that the property the defendant entered did not constitute a "fenced area" for purposes of RCW 9A.04.110(5). *Id.* at 580-81. The court determined that the ordinary

meaning of "fenced area" potentially includes both partially enclosed and totally enclosed areas. *Id.* at 579. As a result, the court looked to the common law to determine the plain meaning of the term. *Id.* Relying on the common law understanding of burglary, the court stated that "the term 'fenced area' may be understood as a contemporary formulation of the concept of curtilage. By including 'fenced area' in the definition of a building for burglary, the legislature intended the whole curtilage as a proper object of the crime, rather than just the buildings in the curtilage." *Id.* at 580.

The court concluded,

> The common law context indicates that the plain meaning of 'fenced area' is limited to the curtilage of a building or structure that itself qualifies as an object of burglary (as defined in RCW 9A.04.110(5)). The curtilage is an area that is *completely enclosed* either by fencing alone or, as was the case in *Wentz*, a combination of fencing and other structures.

*Id.* (emphasis added).

B.     ANALYSIS

Dean argues that under *Engel*, an area surrounded by a fence can constitute a "fenced area" under RCW 9A.04.110(5) only if the fence encloses another structure that falls within the definition of "building." He asserts that under this rule, there was insufficient evidence to prove that the Atkinson Construction yard was a "fenced area" because there were no structures within the yard that qualified as buildings as defined in RCW 9A.04.110(5). We reject this argument.

*Wentz* established that the ordinary meaning of "fenced area" clearly includes an area that is completely surrounded by a fence. 149 Wn.2d at 352. The court in *Engel* did not contradict this holding. Instead, the court also concluded that a "fenced area," which it equated with curtilage, included an area that a fence completely encloses. *Engel*, 166 Wn.2d at 580. The

court discussed curtilage in the context of that case only to address the State's argument that a partially enclosed area could constitute a "fenced area."

In addition, *Engel* did not involve a situation where a fenced area contained no other structures. In that case, the property at issue included several buildings. *Engel*, 166 Wn.2d at 574. Therefore, when the court stated that the meaning of fenced area is "limited to the curtilage of a building or structure that itself qualifies as an object of burglary," *id.* at 580, the court was addressing only the facts presented in that case. There is no indication that the court intended to establish a broad rule requiring that a completely enclosed area be the curtilage of a building to constitute a "fenced area."

The key holding in *Engel* was not that another structure must be within the fenced area, but that a "fenced area" under RCW 9A.04.110(5) must be completely enclosed. *See id.* The court was considering the State's position that "fenced area" included property that was only partially enclosed. *Id.* at 578. The court believed that this position would lead to absurd results.

> Under the State's interpretation, would-be petty criminals who trespass might be liable for burglary even if the property line at their point of entry were unfenced and unmarked, even if they remained on the property without approaching any buildings or structures, and even if the property were such that they could enter and remain without being aware that it was fenced. Such examples are well outside the category of offenses the legislature intended to punish as burglary.

*Id.* at 580. The court avoided this absurd result by holding that a fenced area must be completely enclosed. *Id.*

Both *Wentz* and *Engel* agree that under the plain language of RCW 9A.04.110(5), a "fenced area" constitutes a "building" if the fencing completely encloses the area. Here, the undisputed evidence was that a high fence completely enclosed the Atkinson Construction storage yard. We conclude that this constituted sufficient evidence that the area Dean entered constituted a "building" under the plain meaning of RCW 9A.04.110(5).

Even under Dean's interpretation of "fenced area," the fence here enclosed other structures that fell within the definition of "building." There was undisputed evidence that there were large storage containers, referred to as conexes, within the fenced yard. RCW 9A.04.110(5) defines "building" to include a "cargo container." The conexes fall within the definition of "cargo container," meaning that they constituted "buildings" for purposes of RCW 9A.04.110(5). And these were relatively permanent structures – two of the conexes had roofs. Therefore, the storage yard was "the curtilage of a building or structure that itself qualifies as an object of burglary." *Engel*, 166 Wn.2d at 580.

Dean argues that the Atkinson storage yard cannot be considered the curtilage of the conexes because the yard and the cargo containers must be so intimately associated with each other as to be the equivalent of a house and its backyard. However, the court in *Engel* stated only that the fenced area be the curtilage of "an object of burglary (as defined in RCW 9A.04.110(5))." 166 Wn.2d at 580. RCW 9A.04.110(5) defines a cargo container as being a building capable of being burglarized. Neither the statute nor *Engel* add the requirement that the cargo container be intimately tied to a surrounding fenced area.

Accordingly, we hold that there was sufficient evidence that the Atkinson Construction yard was a "fenced area" under RCW 9A.04.110(5) because a fence completely enclosed the area.

## CONCLUSION

We affirm Dean's conviction of second degree burglary.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
SUTTON, J.

_____
GLASGOW, A.C.J.