IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                  Respondent,<br><br>      v.<br><br>KENNETH LAVELLE MADDEN,<br><br>                  Appellant. | No. 80302-6-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

CHUN, J. — Kenneth Madden Jr. contacted a person with three separate no-contact orders against him. For this single act, the State charged Madden with three counts of violating a no-contact order. At arraignment, the trial court ordered that Madden remain shackled based on the nature of his offense, criminal history, and prior resistance of restraints. The jury found him guilty as charged, and the trial court imposed a $100 DNA testing fee. Madden appeals. We affirm one of his convictions but reverse two based on double jeopardy principles. And we remand for the trial court to resentence Madden and determine whether the State has previously collected his DNA.

## I. BACKGROUND

King County Superior Court entered three separate no-contact orders against Madden in favor of S.B. Madden then contacted S.B. Officers arrested Madden for violating the orders. The State charged Madden with one count of violation of a court order.

Citations and pin cites are based on the Westlaw online version of the cited material.

While jailed pending trial, Madden reported that his cell mate had called him racial slurs and in response, jail officials told Madden to pack his belongings and prepare to move to another cell. Madden asked why he had to move if it was his cell mate who called him slurs, and refused to pack his belongings. Jail officials charged Madden with major rule violations for Disobeying and Interference.

At arraignment, the State requested that Madden remain in restraints based on his criminal history, the report of the jail incident, his behavior towards the alleged victim, and a claim by a corrections officer that "the last time he was in court when the restraints were taken off, he also resisted us putting them back on him." In granting the State's request, the trial court explained:

> I want to make it really clear that it is absolutely not based at all on this incident report. It's based on the nature of the underlying crime, what's in the affidavit of probable cause. Plus he's got—literally all of his misdemeanors are assault four, malicious mischief, or violation of no-contact orders. And then the refusal to go back into restraints last time. The incident report is not the basis of this, which I believe is in itself not sufficient.

On the first day of trial, the State amended the information to include two more counts of violation of a court order for the same act prompting the original count. The jury found Madden guilty as charged. The trial court ordered Madden to provide a DNA sample and pay a $100 sampling fee.

## II. ANALYSIS

### A. Double Jeopardy

Madden says his three convictions for violation of a no-contact order violate double jeopardy principles, since they stem from a single criminal act. We

2

agree and reverse two of his convictions.

Article I, section 9 of the state constitution and the double jeopardy clause of the Fifth Amendment to the United States Constitution protect against multiple punishments for the same offense. State v. Robinson, 8 Wn. App. 2d 629, 638, 439 P.3d 710 (2019); North Carolina v. Pearce, 395 U.S. 711, 729, 89 S. Ct. 2089, 23 L. Ed. 2d 656 (1969); U.S. CONST. amend. V; CONST. art. I, § 9. Courts interpret the state and federal provisions in the same manner. State v. Glasmann, 183 Wn.2d 117, 121, 349 P.3d 829 (2015). "When a person is charged with multiple counts of the same offense, 'each count must be based on a separate and distinct criminal act.'" Robinson, 8 Wn. App. 2d at 638 (quoting State v. Mutch, 171 Wn.2d 646, 662, 254 P.3d 803 (2011)). "It must be 'manifestly apparent' from the record, testimony, and argument that . . . identical charges are based on separate acts." Id. (quoting Mutch, 171 Wn.2d at 664). We will remedy a double jeopardy violation by reversing the redundant convictions. Mutch, 171 Wn.2d at 664.

"If a defendant is convicted of violating a single statute multiple times, the proper inquiry in a single statute case is 'what unit of prosecution' has the Legislature intended as the punishable act under the specific criminal statute." State v. Tili, 139 Wn.2d 107, 113, 985 P.2d 365 (1999) (quoting State v. Adel, 136 Wn.2d 629, 634, 965 P.2d 1072 (1998)). In a unit of prosecution case, a court will first look to the statute; and if it does not define the unit of prosecution, the court turns to legislative history to discern legislative intent. State v. Jensen, 164 Wn.2d 943, 949, 195 P.3d 512 (2008). "Unless the legislature clearly and

unambiguously intends to turn a single transaction into multiple offenses, the rule of lenity requires a court to resolve ambiguity in favor of one offense." Id. "The unit of prosecution rule protects the accused from overzealous prosecution." State v. Latham, 3 Wn. App. 2d 468, 475, 416 P.3d 725 (2018).

When examining the language of a statute, a court first looks to its plain meaning to determine legislative intent. State v. Brown, 159 Wn. App. 1, 9–10, 248 P.3d 518 (2010). "Plain meaning is discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." Id. at 10 (quoting State v. Elmore, 143 Wn. App. 185, 188, 177 P.3d 172 (2008)). But "where a statute is susceptible to an interpretation that may render it unconstitutional, courts should adopt, if possible, a construction that will uphold its constitutionality." In re Det. of C.W., 147 Wn.2d 259, 277, 53 P.3d 979 (2002).

The State charged Madden with violating RCW 26.50.110(4) and (5), which provide:[1]

> (4) Any assault that is *a violation* of *an order* issued under this chapter, chapter 7.92, 7.90, 9A.40, 9A.46, 9A.88, 9.94A, 10.99, 26.09, *26.10, 26.26A, 26.26B, or 74.34 RCW, a valid foreign protection order as defined in RCW 26.52.020, or a valid Canadian domestic violence protection order as defined in RCW 26.55.010, and that does not amount to assault in the first or second degree under RCW 9A.36.011 or 9A.36.021 is a class C felony, and any conduct in violation of such an order that is reckless and creates a substantial risk of death or serious physical injury to another person is a class C felony.

---

[1] The record does not make clear whether Madden's three convictions fell under RCW 26.05.110(4), subsection (5), or both. But our interpretation below applies to either subsection.

4

> (5) *A violation* of *a court order* issued under this chapter, chapter 7.92, 7.90, 9A.40, 9A.46, 9A.88, 9.94A, 10.99, 26.09, *26.10, 26.26A, 26.26B, or 74.34 RCW, a valid foreign protection order as defined in RCW 26.52.020, or a valid Canadian domestic violence protection order as defined in RCW 26.55.010, is a class C felony if the offender has at least two previous convictions for violating the provisions of an order issued under this chapter, chapter 7.90, 9A.40, 9A.46, 9A.88, 9.94A, 10.99, 26.09, *26.10, 26.26A, 26.26B, or 74.34 RCW, a valid foreign protection order as defined in RCW 26.52.020 or a valid Canadian domestic violence protection order as defined in RCW 26.55.010. The previous convictions may involve the same victim or other victims specifically protected by the orders the offender violated.

RCW 26.50.110 (emphasis added).

The State, citing Brown, 159 Wn. App. at 10–11, says that use of the indefinite article "a" preceding "court order" in subsection (5) shows that the legislature plainly intended for a violation of each individual court order to be the unit of prosecution. And "[t]he Supreme Court 'has consistently interpreted the legislature's use of the word 'a' in a criminal statute as authorizing punishment for each individual instance of criminal conduct, even if multiple instances of such conduct occurred simultaneously.'" Id. at 11 (quoting State v. Ose, 156 Wn.2d 140, 147, 124 P.3d 635 (2005)). RCW 26.50.110(4) similarly criminalizes "a violation of *an* order." (Emphasis added.) While the State does not address subsection (4), their claim about the meaning of the indefinite article "a" would have the same result when applied to subsection (4). The State's interpretation of RCW 26.50.110(5) follows statutory interpretation principles that Washington courts have regularly applied when deciding double jeopardy issues. See, e.g., Ose, 156 Wn.2d at 148 (applying the same meaning to "a" to conclude that

multiple convictions for possession of multiple stolen access devices did not violate double jeopardy).

But we may also apply this meaning of the indefinite article "a" to the statute's use of "a violation," which interpretation indicates that the Legislature may have intended the unit of prosecution to be an individual act constituting a "violation."[2] And here, while Madden violated multiple court orders, he committed only one act constituting a "violation": at sentencing, the State recognized "that in each crime, the defendant had the same intent—contact with [S.B.], that each occurred at the same time and place as noted above, and each involve the same victim, [S.B.] (assuming the separate courts themselves are not the victims)."

The State cites no case in which a court allowed multiple convictions under a single statute based on a single act.[3] And given the principle that

_____

[2] In Brown, this court considered the meaning of "a violation" in RCW 26.50.110(1). 159 Wn. App. at 10–11. The defendant was convicted of multiple counts of violation of a no-contact order for making separate contacts with the protected party over separate days. Id. at 13. The court determined that the use of the word "a" established the unit of prosecution as each single violation of the no-contact order. Id. at 10–11. It thus held that the defendant's convictions did not violate double jeopardy, since the contacts with the protected party were separate and not continuous. Id. at 13.

[3] None of the Washington cases cited by the parties address these circumstances, but some suggest that a single act should serve as the unit of prosecution. In State v. Westling, the court reversed two of a defendant's three arson convictions when the defendant set a single fire that burned three vehicles. 145 Wn.2d 607, 612, 40 P.3d 669 (2002). In State v. O'Brien, the court reversed three of a defendant's four bail jumping convictions that stemmed from his failure to report to jail to serve four consecutive sentences. 164 Wn. App. 924, 927, 267 P.3d 422 (2011). The court concluded that the unit of prosecution in the underlying bail jumping statute was ambiguous regarding the unit of prosecution, applied the rule of lenity, and reversed three of the defendant's convictions. Id. at 929–30.

And two out-of-state decisions appear to suggest that Madden's conviction violates double jeopardy principles. In Sutton v. State, an unpublished decision by the Court of Appeals of Indiana, the court reversed one of a defendant's two convictions for invasion of privacy. Noted at 83 N.E.3d 1274, 2017 WL 1375125 at *3 (Ind. Ct. App. 2017); see GR 14.1(c). The State had charged the defendant with those two counts based on his violation of a valid no-contact order and a valid protective order. Id. at *1.

"[w]hen a person is charged with multiple counts of the same offense, 'each count must be based on a separate and distinct criminal act,'" the State's interpretation of "a court order" would lead to an unconstitutional result. Robinson, 8 Wn. App. 2d at 638 (quoting Mutch, 171 Wn.2d at 662). Since we avoid interpreting statutes in a way that would lead to such a result, we conclude that RCW 26.50.110(4) and (5) unambiguously define their unit of prosecution as an individual act constituting a "violation."

Thus, we reverse counts two and three of Madden's no-contact order violation convictions.

B. Shackling

Madden says the trial court violated his constitutional rights under article I, section 22 of the state constitution and the Sixth and Fourteenth Amendments to the United States Constitution by restraining him at arraignment. While we have concerns about this issue, we conclude the trial court acted within its discretion.

The right to a fair trial protected by the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington State Constitution entitles a defendant to appear at nonjury pretrial hearings free from

---

In analyzing whether the convictions violated state double jeopardy principles, the court asked whether the defendant had been convicted "for a crime which consists of the very same act as another crime for which the defendant has been convicted." Id. at *3 (quoting Phillips v. State, 25 N.E.3d 1284, 1291 (Ind. Ct. App. 2015)). Since "[t]he State produced evidence of only one act that could have violated the protective and no-contact orders," it reversed one of the defendant's two convictions. Sutton, 2017 WL 1375125 at *3.

And in People v. Wood, the New York Supreme Court, Appellate Division determined that a defendant's two convictions for criminal contempt violated a statutory prohibition on double jeopardy, after the defendant violated two separate protection orders by harassing his wife over the phone once. 260 A.D.2d 102, 109, 698 N.Y.S.2d 122 (N.Y. App. Div. 1999).

all bonds or shackles absent extraordinary circumstances. State v. Jackson, 195 Wn.2d 841, 852, 467 P.3d 97 (2020). In Jackson, our Supreme Court recognized the abominable legacy of shackling in the United States, which sentiments we echo:

> The problems in the history of shackling in early America are not limited to the courts and incarcerated individuals. . . . [T]he use of shackling as a means of control and oppression, primarily against people of color, has run rampant in the history of this country. Shackles and restraints remain an image of the transatlantic slave trade and the systematic abuse and ownership of African persons that has endured long beyond the end of slavery. Shackles and restraints also represent the forced removal of Native people from their homelands through the Trail of Tears and the slave labor of Native people. We recognize that although these atrocities occurred over a century ago, the systemic control of persons of color remains in society, particularly within the criminal justice system.

195 Wn.2d at 851 (internal citation omitted).

We nevertheless review for abuse of discretion a trial court's shackling decision. Id. at 850. "A trial court abuses its discretion when its 'decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons.'" Id. (quoting State v. Turner, 143 Wn.2d 715, 724, 23 P.3d 499 (2001)). And we may not find abuse of discretion simply because we would have decided the issue differently. Gilmore v. Jefferson County Pub. Transp. Benefit Area, 190 Wn.2d 483, 494, 415 P.3d 212 (2018).

"A trial court *must* engage in an individualized inquiry into the use of restraints prior to every court appearance," including pretrial proceedings. Jackson, 195 Wn.2d at 854–55. In making a shackling decision, the court may consider:

> [T]he seriousness of the present charge against the defendant; defendant's temperament and character; [their] age and physical attributes; [their] past record; past escapes or attempted escapes, and evidence of a present plan to escape; threats to harm others or cause a disturbance; self-destructive tendencies; the risk of mob violence or of attempted revenge by others; the possibility of rescue by other offenders still at large; the size and mood of the audience; the nature and physical security of the courtroom; and the adequacy and availability of alternative remedies.

State v. Hartzog, 96 Wn.2d 383, 400, 635 P.2d 694 (1981) (quoting State v. Hartzog, 26 Wn. App. 576, 588–89, 615 P.2d 480 (1980)).  A trial court abuses its discretion if its decision to physically restrain a defendant does not rest on "evidence which indicates that the defendant poses an imminent risk of escape, that the defendant intends to injure someone in the courtroom, or that the defendant cannot behave in an orderly manner while in the courtroom."  State v. Finch, 137 Wn.2d 792, 850, 975 P.2d 967 (1999).

The trial court ordered Madden to remain restrained based on the nature of the underlying offense, his criminal history, and the correction officer's statement that Madden had refused to go back into restraints.  The night police arrested Madden for the underlying charges, S.B. alleged that Madden had pushed her to the ground and threatened her.  When approached by police that night, he ran away and officers had to pursue him on foot.  Madden had committed no felonies as an adult, but had been convicted of three misdemeanor fourth degree assault charges, one misdemeanor malicious mischief charge, and two other misdemeanor violation of a no contact order charges.  In light of the foregoing, particularly given his resistance to the corrections officer putting restraints back on him, it was not manifestly unreasonable to conclude that

9

Madden would not behave in an orderly manner while in the courtroom. Thus, the trial court did not abuse its discretion.

## C. DNA Collection Fee

Madden says the trial court erred by imposing a $100 DNA fee, since it has already collected his DNA. Thus, he asks this court to strike the DNA fee from his judgment and sentence. The State claims that the record is silent about whether it has collected Madden's DNA, so the court should not strike the fee. We remand to the trial court to determine whether the State has previously collected a DNA sample from Madden.

The $100 DNA sampling fee is mandatory "unless the state has previously collected the offender's DNA as a result of a prior conviction." State v. Catling, 193 Wn.2d 252, 259, 438 P.3d 1174 (2019) (quoting LAWS OF 2018, Ch. 269, § 18). The record shows that because of prior convictions, various courts have ordered Madden to submit to DNA testing at least three times before this instance. But as observed by this court in State v. Thibodeaux, offenders do not always submit to DNA testing when ordered to do so. 6 Wn. App. 2d 223, 230, 430 P.3d 700 (2018). And an appendix to the State's affidavit of probable cause for these charges states that it has not sampled Madden's DNA. When the offender has prior convictions for which the State should have sampled their DNA, but the record does not establish whether such sampling occurred, this court has repeatedly remanded to the trial court to determine whether sampling has previously occurred, and if so, to strike the fee. See, e.g., State v. Tavares, No. 77004-7-I, slip op. at 27 (Wash. Ct. App. Aug. 26, 2019) (unpublished),

10

http://www.courts.wa.gov/opinions/pdf/770047orderopinion.pdf; State v. Davis,

No. 78487-1-I, slip op. at 17 (Wash. Ct. App. Oct. 7, 2019) (unpublished),

http://www.courts.wa.gov/opinions/pdf/784871.pdf; see GR 14.1(c).

We affirm count one of Madden's convictions for violation of a no-contact

order, reverse counts two and three, and remand for resentencing. We also

remand to the trial court to determine whether the State has previously sampled

Madden's DNA, and if so, strike the associated fee.[4]

WE CONCUR:

Chun, J.

Coburn, J.

Smith, J.

---

[4] RCW 43.43.754(1)(a) requires collection of an offender's DNA if they commit a felony, leading Division Three of this court to hold that an offender's prior felonies give rise to a presumption that the State has previously collected their DNA. State v. Van Wolvelaere, 8 Wn. App. 2d 705, 710, 440 P.3d 1005 (2019), rev'd on other grounds by State v. Van Wolvelaere, 195 Wn.2d 597, 461 P.3d 1173 (2020).
RCW 43.43.754(1)(a)(i) also requires collection of an offender's DNA if they commit fourth degree with domestic violence circumstances. Madden has a prior conviction for fourth degree assault with domestic violence circumstances, so the same presumption applies on remand.

We also note that in at least two previous instances, Madden was ordered to pay the $100 DNA sampling fee, and was ordered to submit to sampling at least three times. Except where an offender will not serve a term of confinement because of a conviction, RCW 43.43.754(5) places the burden of collecting the offender's DNA on the State. But RCW 43.43.7541, which makes the DNA fee mandatory "unless the state has previously collected the offender's DNA as a result of a prior conviction," does not address circumstances where a court has previously ordered the offender to pay the fee, but the State failed to collect the offender's DNA. This would apparently allow an offender to be subject to multiple collection fees even when the fault of non-collection lies with the State.