IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 38744-5-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOHN THOMAS EDWARD CLARK, | ) | |
| | ) | |
| Respondent. | ) | |

PENNELL, J. — The State of Washington appeals a below-guideline sentence imposed on John Thomas Edward Clark after he pleaded guilty to a felony no-contact order violation. We agree with the State that the sentencing court based its sentencing decision, at least in part, on factors that are impermissible under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. We therefore reverse the sentence and remand for resentencing.

FACTS

John Thomas Edward Clark was charged with one count of felony violation of a no-contact order (domestic violence). According to the affidavit of probable cause, Mr. Clark repeatedly violated an order of protection taken out by his ex-wife. The affidavit stated Mr. Clark attempted to contact his ex-wife "multiple times" through Facebook Messenger. Clerk's Papers (CP) at 1. Mr. Clark also attempted to contact his

ex-wife by sending "multiple" communications through Facebook Messenger to his ex-wife's mother. CP at 2. The Facebook messages were allegedly not threatening or intimidating and most recently they consisted of expressions of apology. Mr. Clark's case was charged as a felony because he had more than two prior convictions for violating a no-contact order.

Mr. Clark apparently was on pretrial release throughout the pendency of his case. A little over one year after the filing of charges, Mr. Clark pleaded guilty pursuant to a plea agreement. According to the agreement, the parties had an "[a]greed recommendation" for a prison-based Drug Offender Sentencing Alternative (DOSA). CP at 8. The DOSA recommendation would entail 30 months of treatment in confinement followed by 30 months of community custody. This was the minimum possible sentence under the SRA absent an exceptional sentence downward.

Mr. Clark's plea agreement referenced the affidavit of probable cause as the factual basis for his plea. According to an understanding of criminal history signed by the parties, Mr. Clark had four prior convictions for violation of a no-contact order. All four convictions were sentenced on the same day, which was approximately six months before the current offense conduct.

After Mr. Clark's entry of the plea, the case proceeded directly to sentencing.

The State requested the sentencing court impose the agreed recommended sentence.

Mr. Clark's ex-wife was present in the courtroom with a victim advocate, but opted not to

present a statement to the court.

Defense counsel also offered the following comments and opinions:

I know I stood in front of you with many clients and told you they're a joy
to work with and easy to work, but I've never meant that more when I say
that about Mr. Clark.
. . . The day I met Mr. Clark probably about eight or nine months ago he
told me he wanted to take responsibility for his actions, told me he was
ready to plead guilty, but the offer on the table was this; it was prison
DOSA where he would have to derail the past two years of his
rehabilitation, his getting sober, getting his life on track to go to prison for
20 months at best with good time. And so for the past nine months I've
been working with the State in attempt to find a resolution that would allow
Mr. Clark to potentially not spend nearly two years in custody followed by
DOC [Department of Corrections community custody].
         DOC isn't his concern. He knows he'll be able to be compliant with
that. It's really going to prison, taking two years off work, child support
payments, all of those things and having to kind [of] get back out of custody
and start his life over again for however many-th (sic) time.
         Mr. Clark and I met last night to go over all the plea paperwork and
he told me, you know, I've picked my life up before; I can do it again.
That's heartbreaking for me to hear because he wants to take responsibility
for his actions, he knows that he violated this no contact order back in
November of 2020, but he's gotten sober, he's gotten clean. Since
November of 2020 as far as I'm aware there haven't been any allegations of
violations of a no-contact order. I'm sure the State would have informed me
if there were. So he's been good, and he's done what he needs to do.
         It's unfortunate that the [SRA] is structured the way it is. The law is
the law and no-contact orders are such a procedural charge that it's easy for

3

the State to prove at trial. Mr. Clark didn't want to put the community through that; he didn't want to put his family and friends through that, or the victim through that. So he's taking responsibility and he's ready to enter his guilty plea.

I think the only way and I told Mr. Clark this, the only way I would have been able to help him is to go back in time, never leave the prosecutor's office, be the assigned DPA [deputy prosecuting attorney] on this case, and have a little empathy for the journey that he's gone on, and the changes that he's made in his life. This is a hard one for me, Your Honor, to sit here and have Mr. Clark booked into custody today knowing that for the next two years he's going to have to sit still, and as an addict he's going to have to be really, really structured when he gets out of custody and be very focused. He knows he can do it; I know he can do it, but it's hard to sit here and know that transport is coming to take him away for two years.

Rep. of Proc. (RP) (Jan. 13, 2022) at 16-18.

Mr. Clark then presented his statement to the sentencing court, acknowledging substance abuse issues and expressing remorse.

After hearing from counsel and Mr. Clark, the court asked Mr. Clark how it could be sure Mr. Clark would not again violate a no-contact order given his history of noncompliance. Mr. Clark answered that he was currently sober and did not want to cause further problems for his family. The sentencing court then asked defense counsel whether it had the ability to require additional community custody if it were to impose an exceptional downward sentence. Defense counsel responded there was a mandatory 12-month term.

4

The sentencing court then requested a sidebar with counsel and the victim advocate. Due to technical issues, the sidebar was not recorded but in the court's findings of fact and conclusions of law, it described the conversation as follows:

> 4. While considering what sentence to impose, the [sentencing Court] called for a sidebar with defense counsel, the State, and the victims' advocate. At the commencement of the sentencing hearing, it was initially reported to the sentencing Court, by the assigned DPA, that the victim did not intend to provide a statement but was present and attending the hearing with her assigned victim advocate present. Following the allocution, the sentencing Court considered the appropriateness of imposing an exceptional sentence below the standard range and asked the victims' advocate to speak with the victim in this matter (who was also present) privately to discuss whether she would be comfortable with an exceptional sentence below the standard range. The Court wished to provide victim an opportunity for input and to put her on notice that the Court was considering imposing a sentence below the standard range and below the 30 month confinement followed by 30 month community custody Prison DOSA recommendation. The sentencing [Court] specifically and affirmatively indicated to the victims' advocate that the victim was not required to answer the question if she was not comfortable. The victim's advocate consulted with the victim and subsequently relayed to the Court that the victim felt torn because the defendant seemed sincere, but she still wanted him to be held accountable for his actions.

CP at 33. In the court's oral statements during sentencing it noted that the victim "was also concerned about having some harassment from the family and was feeling very torn." RP (Jan. 13, 2022) at 25.[1]

---

[1] Apparently, Mr. Clark had approximately 11 supporters (family and friends) in the courtroom at the time of the hearing.

Immediately following the sidebar, defense counsel noted that the most recent of Mr. Clark's violations were communications expressing apology. The State then expressed it had "grave concerns" about the nature of the proceeding, explaining it was "quite obvious" that defense counsel was operating in bad faith to undermine the agreement. *Id*. at 22. After the sentencing court orally summarized the sidebar for the record, the State specifically took issue with defense counsel's comment suggesting the State did not have empathy and asserting defense counsel would have handled the case differently if they were in the role of the prosecutor. Despite the State's concerns, it nevertheless stated it was "not going to deviate from the agreement and try to make this a contested sentencing like defense did." *Id*. at 26.

The court imposed an exceptional downward sentence of 6 months' confinement with 12 months' community custody, and it issued a 5-year no-contact order. After the hearing concluded, the parties and the court went back on the record to allow the victim's advocate to relay the victim's response to the exceptional sentence. The advocate explained the victim felt torn between wanting Mr. Clark to be held accountable for his actions and believing he was making progress toward rehabilitation. However, the advocate stated that when the victim heard Mr. Clark was sentenced to only 6 months of incarceration, "she was very shocked, she was angry, she was upset" because she felt

Mr. Clark was not being held accountable for his conduct. *Id*. at 37. The State also noted that the victim was not asked how she felt about the 6-month sentence, simply how she felt about an unspecified reduction from the recommendation of 30 months.

The sentencing court entered written findings of fact and conclusions of law. Relevant to this appeal is the following from the court's findings of fact:

- The court provided the victim an opportunity for input and to put her on notice that the court was considering imposing a sentence below the standard range and below the parties' agreement.

- The victim's advocate consulted with the victim and subsequently relayed to the court that the victim felt torn because the defendant seemed sincere, but she still wanted him to be held accountable for his actions.

- Mr. Clark seems to have reformed himself, recognizes the severity of his actions, and comprehends the significant consequences to himself resulting from continued violations of the no-contact order in the future.

- Mr. Clark's prior countable similar convictions resulted from a common and single sentencing date with offense dates confined to a narrow period of time.

- There was no indication presented by the State that any communication in violation of a valid protection order was threatening, intimidating, or violent in content/nature.

- Nearly all unlawful communication allegedly was provided by Mr. Clark in written form to the victim and therefore the substance of the communication was identifiable and known.

- A sentence of 6 months of confinement plus 12 months of community custody is more proportionate to the crime than a standard range sentence.

- Mr. Clark's allocution indicated that further violations of the no-contact order would be unlikely to occur.

- A 6-month incarceration sentence would be a better allocation of State and government resources.

- By the time he was sentenced, Mr. Clark was not at a high risk of reoffense.

- While defense counsel expressed general concern regarding the consequences of the joint recommendation in oral comments at sentencing, counsel did not affirmatively request that the court impose an exceptional downward sentence nor did counsel affirmatively request the court deviate from the written plea agreement.

- The sentencing court intentionally decided in its own discretion not to follow the parties' recommendation as outlined in the mutually signed statement on plea of guilty.

  Relevant to this appeal is the following from the court's conclusions of law:

- The court found substantial and compelling reasons existed to justify imposition of an exceptional sentence below the standard range as ordered in the judgment and sentence.

  The State timely appeals from Mr. Clark's judgment and sentence.

## ANALYSIS

*Exceptional sentence*

The State identifies six reasons proffered by the sentencing court in support of an exceptional sentence downward: (1) the victim's support of sentence, (2) post-offense rehabilitation, (3) minor nature of the offense conduct, (4) proportionality of the sentence, (5) cost of punishment, and (6) Mr. Clark's low risk to reoffend. According to the State, at least five of these six reasons are invalid bases for an exceptional sentence downward. The State indicates the only potential basis cited by the court is the third, the minor nature of Mr. Clark's offense conduct. However, the State contends this basis for a departure is not warranted by the facts of Mr. Clark's case.

Generally, a sentencing court must impose a term of incarceration within the standard sentence range. *State v. Fowler*, 145 Wn.2d 400, 404, 38 P.3d 335 (2002). The court may, however, impose a sentence above or below the standard range for reasons that are "substantial and compelling." RCW 9.94A.535. The SRA lists numerous nonexclusive mitigating factors the court can consider in exercising its discretion to impose an exceptional sentence downward. *See* RCW 9.94A.535(1). To be legally valid, an unlisted mitigating factor must be one that has not already been contemplated by the legislature and it must be one that relates to the defendant's offense conduct, not simply the defendant's personal character or circumstances. *State v. Law*, 154 Wn.2d 85, 101, 103, 110 P.3d 717 (2005). We review de novo the legal validity of a reason for an exceptional sentence. *State v. Borg*, 145 Wn.2d 329, 336, 36 P.3d 546 (2001).

Mr. Clark does not appear to disagree with the State's position that the majority of the reasons cited by the sentencing court in support of its decision are not valid reasons for an exceptional sentence downward. We concur with the State's position. The victim's purported agreement with the sentence, post-offense rehabilitation, and low risk of recidivism are all factors specific to Mr. Clark, not his offense conduct. Furthermore, issues such as the proportionality of the sentence and costs of incarceration have already

10

been considered by the legislature in crafting the SRA. RCW 9.94A.010(1), (6);

*see State v. Pascal*, 108 Wn.2d 125, 137-38, 736 P.2d 1065 (1987).

The primary dispute on appeal is whether the sentencing court was justified in

imposing an exceptional sentence downward based on the minor nature of Mr. Clark's

offense conduct. While our case law has not specifically authorized an exceptional

sentence downward based on the minor nature of a defendant's offense conduct, a

downward departure may be available if the defendant's violation was de minimis. *State*

*v. Thomason*, 199 Wn.2d 780, 790, 512 P.3d 882 (2022). The legal test for this type of

departure is that "the de minimis nature of the crime must be a factor that the legislature

did not necessarily consider when it enacted the elements of the crime or the standard

sentence range, and the de minimis nature of the crime must be a factor that is substantial

and compelling enough to warrant a downward departure." *Id*.

The State does not dispute that the de minimis nature of a no-contact order

violation is a factor not necessarily considered by the legislature in setting the penalty

for felony violation of a no-contact order in the domestic violence prevention statute.

*See* former RCW 26.50.110 (2019), *repealed by* LAWS OF 2021, ch. 215, § 170.[2] There is

no dispute that the legislature recognized some varying degrees of misconduct when it

---

[2] The applicable statute is now located at RCW 7.105.450.

crafted the statute. In general, a no-contact order violation has been classified by the

legislature as a gross misdemeanor. Former RCW 26.50.110(1)(a); RCW 7.105.450(1)(a).

But the offense is elevated to a class C felony if the defendant has at least two prior

no-contact order convictions or if the offense was perpetrated through commission

of an assault or dangerously reckless conduct. Former RCW 26.50.110(4)-(5);

RCW 7.105.450(4)-(5).[3] While the legislature has recognized some different degrees

of offense conduct in setting the penalties for violations of no-contact orders, the conduct

sufficient to qualify as a felony under the statute of conviction, former RCW 26.50.110(5)

(felony based on two or more prior convictions), can vary widely. On the aggravating

side, a defendant with two or more prior convictions might violate the no-contact order

by assaulting the protected party.[4] On the mitigating side, a defendant with two prior

convictions might violate the statute by a peaceful interaction that was initiated by the

protected party. Our case law recognizes that if the defendant's conduct falls on the

extreme end of the proscribed behavior, a departure may be warranted. *See, e.g.*, *State v.*

---

[3] Both forms of felony no-contact order violations are classified as seriousness level V offenses under the SRA's sentencing grid. RCW 9.94A.515.

[4] We note that the unit of prosecution for violation of a no-contact order is the individual violation. *See State v. Madden*, 16 Wn. App. 2d 327, 334-36, 480 P.3d 1154 (2021). Thus, an individual such as Mr. Clark whose offense conduct falls under subsection (5) of former RCW 26.50.110 would be subject to only one penalty.

*Fisher*, 108 Wn.2d 419, 739 P.2d 683 (1987).

Mr. Clark's offense conduct included both aggravating and mitigating circumstances. In aggravation, Mr. Clark had more than two prior no-contact order violations and, according to the factual basis for Mr. Clark's guilty plea, Mr. Clark contacted his ex-wife on numerous occasions as part of the current offense. The State could have charged Mr. Clark for each separate violation, but chose not to do so. In mitigation, Mr. Clark's prior no-contact order violations were all part of the same criminal case. Mr. Clark's instant violations occurred in writing rather than in person, and the content of Mr. Clark's written communication appeared not to have contained any threatening content.

Given the existence of both aggravating and mitigating circumstances, we doubt whether Mr. Clark's conduct can be fairly characterized as de minimis. Furthermore, the record lacks any input on these issues from Mr. Clark's ex-wife. It is therefore impossible to assess whether, given Mr. Clark's relationship with his ex-wife, his communications with her were interpreted as upsetting or threatening.

We need not definitely decide whether the facts in this case are insufficient to justify an exceptional sentence downward. Because, as set forth above, the sentencing court incorrectly relied on several impermissible factors in imposing an exceptional

sentence downward, remand is required as we cannot discern whether the court would have opted for an exceptional sentence downward based solely on the de minimis nature of Mr. Clark's offense. *See, e.g.*, *State v. Henshaw*, 62 Wn. App. 135, 140, 813 P.2d 146 (1991) (Remand is necessary where the sentencing court placed considerable weight on invalid factors, even if other factors were valid.). On remand, the record may be enhanced by additional information. If on remand the sentencing court finds Mr. Clark's offense conduct was de minimis in a manner not contemplated by the legislature, and both compelling and substantial, an exceptional sentence downward may be warranted.

## Compliance with plea agreement

The State argues that defense counsel breached the parties' plea agreement by undermining the parties' recommendation for a prison-based DOSA. Mr. Clark disagrees.

A plea agreement is a contract between the State and the defendant. *State v. Sledge*, 133 Wn.2d 828, 838-39, 947 P.2d 1199 (1997). Basic contract principles of good faith and fair dealing apply. *Id*. at 839. When assessing whether a party has breached a plea agreement we look at the record as a whole, employing an objective standard. *State v. Carreno-Maldonado*, 135 Wn. App. 77, 83, 143 P.3d 343 (2006). The ultimate question is whether the record indicates that a party has undercut the terms

of the agreement, either explicitly or implicitly. *Sledge*, 133 Wn.2d at 840; *State v. Jerde*, 93 Wn. App. 774, 780, 970 P.2d 781 (1999).

There is no allegation that defense counsel explicitly violated the terms of the plea agreement. The question is whether defense counsel undermined the terms of the agreement by expressing misgivings about the parties' agreed disposition.

Here, the context of defense counsel's comments are not indicative of breach. At the time defense counsel expressed misgivings about the terms of the agreement, there was no indication that the court had the authority to impose anything lower than the agreed prison-based DOSA. As noted above, the majority of the mitigating factors cited by the court are not legally cognizable as bases for an exceptional sentence downward and the applicability of a de minimis offense conduct deviation was not readily apparent from the record. Defense counsel seemed to have recognized that there was no lawful basis for the court to depart, noting the only way Mr. Clark could have been helped further would have been if there had been a different deputy prosecuting attorney involved who might have offered a plea to a charge with a lower standard range. At the time defense counsel made their comments, the only risk Mr. Clark appeared to face was that the court would reject the DOSA, resulting in more time in prison. It was proper for defense counsel to take steps to protect against this risk. Taking an objective view of the

15

record as a whole, nothing about defense counsel's conduct should have suggested that the court deviate from the agreed sentence.

We note that on remand defense counsel's posture will be much different. Now that there is a well-defined basis for an exceptional sentence downward, defense counsel must take care not to undermine the parties' plea agreement and suggest the court impose anything other than the agreed DOSA.

## CONCLUSION

Mr. Clark's sentence is reversed. This matter is remanded for resentencing consistent with the terms of this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Lawrence-Berrey, J.

16