# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JUNE 29, 2023

González C.J.
CHIEF JUSTICE

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| ALASKA AIRLINES, INC., | NO. 100485-1 |
| Respondent, | |
| v. | EN BANC |
| STATE OF WASHINGTON DEPARTMENT OF LABOR AND INDUSTRIES, | Filed: June 29, 2023 |
| Appellant. | |

GORDON McCLOUD, J.—The Washington family care act (WFCA), RCW 49.12.265-.295, requires employers to allow employees to use earned time off to care for a sick family member, even if the earned time off is called something other than "sick leave" or "family care leave." It is a statutory choice of leave mandate that trumps conflicting terms of a collective bargaining agreement (CBA) or an employee policy to the contrary on this specific topic.

But this statute also limits the reach of its choice of leave mandate: "The employee taking leave under the circumstances described in this section must comply with the terms of the [CBA] . . . applicable to the leave, except for any

No. 100485-1

terms relating to the choice of leave." RCW 49.12.270(1). And a closely related statute reiterates that limitation; RCW 49.12.290 states, "Nothing in RCW 49.12.270 through 49.12.295 shall be construed to reduce any provision in a [CBA]."

In this case, Alaska Airlines' (AA's) CBA with its flight attendants requires those flight attendants to schedule vacation days in advance. The Department of Labor & Industries (L&I) argues that RCW 49.12.270 displaces the CBA's mandatory advance scheduling requirement term without explicitly saying so. AA argues that it does not.

We agree with AA. It takes more to displace a mandatory CBA term than RCW 49.12.270 contains. In fact, RCW 49.12.270 explicitly preserves non-choice-of-leave terms of the CBA and RCW 49.12.290 bars interpreting RCW 49.12.270 to "reduce any provision in a [CBA]." We therefore hold that RCW 49.12.270 does not displace the advance scheduling requirement of the CBA.

We affirm the decision of the superior court.

FACTUAL AND PROCEDURAL HISTORY

I.    AA flight attendants' vacation and sick leave are governed—in detail—by the CBA

AA and the Association of Flight Attendants-Communication Workers of America, AFL-CIO (AFA) negotiated a CBA that covers AA's flight attendants.

No. 100485-1

Clerk's Papers (CP) at 2138-2232. The CBA details how flight attendants earn sick and vacation days. *Id.* at 2213-18, 2176-83.

AA flight attendants earn vacation days based on their past year of service. *Id.* at 2176. Flight attendants are "entitled" to their annual allotment starting on December 31 of every year. *Id*. During the fall of every year, flight attendants bid for specific vacation days for the upcoming year. *Id*. AA accepts bids based on seniority, and the vacation time gets blocked off in each flight attendant's yearly schedule. *Id*.

Flight attendants can cash out their vacation days for pay up to seven days in advance of the vacation period. *Id*. "Cashing out" means that flight attendants choose to receive vacation pay earlier than the pay period of the scheduled time off, but the vacation days remain on their schedule. *Id.* at 2176, 1651. Flight attendants can also trade vacation days with other flight attendants, but AA must approve the trade by the first day of the month preceding the month in which the scheduled vacation falls. *Id.* at 2176, 2170. The CBA provides that flight attendants can use their allotted vacation days for other types of leave—medical leaves of absence, maternity leaves of absence, and bereavement leaves. *Id.* at 2177-79.

Flight attendants also accrue and are entitled to sick leave. A flight attendant accrues one "trip for pay" (TFP) of paid sick leave for every ten TFPs flown. *Id.* at

No. 100485-1

2181. A TFP is based on mileage flown, not days or hours worked, and a flight attendant can bank a total of 1,443 TFPs. *Id.* at 2143, 2181. A flight attendant must call in sick at least three hours before the flight's scheduled departure to avoid receiving a disciplinary point. *Id.* at 2213-14.

AA uses an attendance control program that assigns disciplinary points for every unplanned absence. *Id.* at 2213-14. The number of points assessed bears an inverse relationship to the amount of notice provided—the more notice provided, the fewer points assessed. *Id*. If a flight attendant reports an "emergency drop," which occurs when an attendant calls in absent for a nonqualifying emergency, then that employee accumulates half of a disciplinary point. *Id.* at 2214, 2218. A flight attendant can accumulate 4.5 points without disciplinary action. *Id.* at 2214. A flight attendant who receives 9.5 disciplinary points becomes eligible for possible termination. *Id*. A flight attendant who receives 12 disciplinary points is terminated from employment. *Id*. However, a flight attendant can work off disciplinary points—for every calendar quarter that the flight attendant works without chargeable occurrences, AA deletes 2 points from the attendant's accumulated points until the total reaches zero. *Id.* at 2214-15. Flight attendants can also bank points based on two consecutive quarters of perfect attendance. *Id.* at 2215.

No. 100485-1

II.  Masserant called in absent to take care of her sick child and received disciplinary points for doing so—in accordance with the CBA

At the time this case arose, Laura Masserant had served as an AA flight attendant since 1991. *Id*. at 402. On January 1, 2011, she had earned 32 vacation days based on her previous year of service. *Id.* at 403, 1651, 1656. That year she bid for her preferred vacation schedule and received: 4 vacation days from January 25-28; 7 vacation days from February 14-20; 7 vacation days from April 8-14; 7 vacation days from November 14-20; and 7 vacation days from December 3-9. *Id.* at 1656. Masserant took her 4days off in January, cashed out her 21 days of vacation from February to November, and kept her 7-day vacation in December. *Id.* at 403, 1652.

But in May of 2011, her son developed bronchitis. *Id.* at 403. Masserant was scheduled for several days of flying at the time. *Id*. She called in absent for a two-day flight sequence to care for her son, but she lacked sufficient sick leave to cover the absence. *Id.* at 403-04, 1653. She requested to use her remaining vacation time to cover the absence and mentioned the WFCA. *Id*. at 403-04.

AA denied that request. *Id*. at 404, 1652. Instead, AA treated Masserant's absence as an "emergency drop" and imposed disciplinary points on her according to its attendance control program. *Id.* at 404, 1653. AA's decision to deny Masserant's request forms the basis for this litigation.

5

No. 100485-1

III.    Procedural history

Masserant filed a complaint with L&I.  She explained that AA barred her from using her vacation time to care for her sick child. *Id.* at 2337-40.

After completing an investigation, L&I issued a $200 infraction to AA for denying Masserant's request to use vacation leave to cover her May absences. *Id.* at 293-95. AA appealed to the Office of Administrative Hearings (OAH) and simultaneously sought to stay the appeal. *Id.* at 89-101.

The airline then filed a lawsuit in federal district court seeking injunctive and declaratory relief. *Id.* at 2086-99. The parties stipulated to dismissing the administrative appeal without prejudice pending the conclusion of the federal case, and the OAH agreed. *Id.* at 85.

In the federal case, AA sought a declaration that the Railway Labor Act (RLA), 45 U.S.C. §§ 151-65, 181-88, preempted the state WFCA complaint. *Id.* at 2087. It based this argument on the fact that the RLA generally preempts the field of CBA interpretation in the airline industry. In addition, AA sought to enjoin L&I's WFCA enforcement activities. *Id*. The district court granted summary judgment in favor of L&I. *Id.* at 1028-29. AA appealed, and a panel of the Ninth Circuit Court of Appeals reversed. *Alaska Airlines Inc. v. Schurke*, 846 F.3d 1081, 1094 (9th Cir. 2017).

6

No. 100485-1

The full Ninth Circuit then granted rehearing en banc and reversed the panel. *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904 (9th Cir. 2018). It held, in a vote of six to five, that the RLA does preempt certain state law claims that depend on CBA interpretation; that Masserant's claim did not depend on CBA interpretation but on interpretation of the WFCA; and, hence, the RLA did not preempt Masserant's WFCA claim. *Id.* at 913-14. The en banc court acknowledged that the CBA must be consulted to confirm the existence of accrued vacation days, but it concluded that that examination was not "sufficient to extinguish an independent state law right to use the accrued time to care for a sick child." *Id.* at 914. The court determined that the parties had agreed on the interpretation of the relevant CBA provisions and that the only dispute was over the interpretation of state law— namely, the WFCA. *Id.* at 927.[1]

L&I then renewed its appeal to the OAH to address that state law issue: whether AA's denial of Masserant's request violated the WFCA. CP at 76-80. The parties filed cross motions for summary judgment. The administrative law judge granted L&I's motion, denied AA's motion, and affirmed L&I's notice of infraction and assessment of the $200 penalty. *Id.* at 3096-3106 (Initial Ord. on Summ. J. Mot.). AA appealed this decision to the L&I director. *Id.* at 3109-35.

---

[1] The United States Supreme Court denied AA's petition for a writ of certiorari. *Alaska Airlines, Inc. v. Schurke*, __U.S. __, 139 S. Ct. 1445, 203 L. Ed. 2d 681 (2019).

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 100485-1

The director affirmed. *Id.* at 3298-3302 (Director's Order). AA appealed the Director's Order to the superior court pursuant to RCW 34.05.570. *Id.* at 1-34. The superior court reversed the Director's Order and dismissed the infraction. *Id*. at 3374-3385 (Mem. Decision & Ord.).

We accepted direct review of the superior court's order as a "fundamental and urgent issue of broad public import which requires prompt and ultimate determination." RAP 4.2(a)(4).

STANDARD OF REVIEW

This court sits in the same position as the superior court and our review is limited to the record before L&I. *Dep't of Lab. & Indus. v. Lyons Enters. Inc*., 185 Wn.2d 721, 731, 374 P.3d 1097 (2016). Under the Washington Administrative Procedure Act (APA), the "burden of demonstrating the invalidity of agency action is on the party asserting invalidity"—AA, therefore, carries the burden in this case. RCW 34.05.570(1)(a).

The APA provides several grounds for challenging an agency order in an adjudicative proceeding. RCW 34.05.570(3). AA raises two of those grounds: "[(1)] The agency has erroneously interpreted or applied the law" and "[(2)] The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial

No. 100485-1

review, supplemented by any additional evidence received by the court under this chapter." RCW 34.05.570(3); CP at 3321.

The first challenge requires interpretation of a statute, RCW 49.12.270. "Interpretation of a statute and its implementing regulations is a question of law," which we review de novo. *In re Impoundment of Chevrolet Truck*, 148 Wn.2d 145, 154, 60 P.3d 53 (2002); *Pub. Util. Dist. No. 1 of Pend Oreille County v. Dep't of Ecology*, 146 Wn.2d 778, 790, 51 P.3d 744 (2002) (under RCW 34.05.570(3)(d)'s error of law standard, courts "determine[] the meaning and purpose of a statute de novo" (citing *Postema v. Pollution Control Hr'gs Bd.*, 142 Wn.2d 68, 77, 11 P.3d 726 (2000))). We also review decisions on summary judgment de novo. *In re Impoundment of Chevrolet Truck,* 148 Wn.2d at 154.

"De novo" means de novo—starting from the beginning, anew. L&I, however, urges us to defer to its own prior interpretations of this statute, as the agency with expertise in this area. We decline to do so. The extent of deference we give to administrative agency interpretations of statutes is a matter of ongoing debate. But we definitely do not defer to an agency interpretation that has changed during the course of litigation toward favoring that agency's own legal argument in the litigation. And that is what happened here. *See* Part IV, below.

No. 100485-1

ANALYSIS

I. This case presents an issue of statutory interpretation, so we begin with the statute's plain language and consider that language in the context of related statutes

RCW 49.12.270 forms part of the WFCA, which governs when and how an employee can take time off to take care of a sick family member. That statute states:

(1) If, under the terms of a [*CBA*] or employer policy applicable to an employee, *the employee is entitled to sick leave or other paid time off, then an employer shall allow an employee to use any or all of the employee's choice of sick leave or other paid time off* to care for: (a) A child of the employee with a health condition that requires treatment or supervision; or (b) a spouse, parent, parent-in-law, or grandparent of the employee who has a serious health condition *or an emergency condition*. An employee may not take advance leave until it has been earned. *The employee taking leave under the circumstances described in this section must comply with the terms of the [CBA] or employer policy applicable to the leave, except for any terms relating to the choice of leave.*

(2) Use of leave other than sick leave or other paid time off to care for a child, spouse, parent, parent-in-law, or grandparent under the circumstances described in this section shall be governed by the terms of the appropriate [CBA] or employer policy, as applicable.

RCW 49.12.270 (emphasis added).

The first italicized clause provides the employee with the right to use vacation time to which they are "entitled" under the CBA to cover an immediate unscheduled absence to care for a sick child. The last italicized sentence, and then all of subsection (2), subjects the employee's exercise of that statutory right to

10

No. 100485-1

choice of leave to the CBA's other "terms."  The CBA in this case contained a clear and mandatory advance scheduling "term."  The question is whether RCW 49.12.270's choice of leave provision silently trumps the CBA's explicit advance scheduling requirements or not.

When interpreting a statute, "[o]ur primary objective is to determine and to apply the legislature's intent." *State v. Conover*, 183 Wn.2d 706, 711, 355 P.3d 1093 (2015). We determine legislative intent by starting with the plain language of the statute, and we consider the meaning of that language in the context of the whole statute and related statutes. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002). "[I]f, after this inquiry, the statute remains susceptible to more than one reasonable meaning, the statute is ambiguous and it is appropriate to resort to aids to construction, including legislative history." *Id*. at 12.

We therefore start with the plain language of RCW 49.12.270 and consider it in the context of related statutes.  This answers the question in AA's favor. We then explain why we reject L&I's arguments that legislative history and agency deference compel a contrary result.

II.     The language of RCW 49.12.270, considered in context of the WFCA as a whole, shows the legislature intended to preserve the terms of the CBA

The plain language of RCW 49.12.270 shows that the legislature intended to preserve all the terms of a CBA—with one exception. First, the statute says that

11

No. 100485-1

employees must comply with the terms of their CBA several different times: "under the terms of a [CBA]," "[A]n employee may not take advance leave until it has been earned," "must comply with the terms of the [CBA]," and "shall be governed by the terms of the appropriate [CBA]." RCW 49.12.270. Second, the statute's directives on this point are mandatory: "must" and "shall." *Id.*

The only exception to the statute's requirement that employees comply with the terms of the CBA is for CBA terms "relating to the choice of leave." RCW 49.12.270(1).

L&I argues that this last sentence, and particularly the phrase "relating to the choice of leave," means that a flight attendant has the flexibility to pick from any banked sick or vacation days to care for a sick family member, regardless of other CBA prerequisites to use of that leave. Br. of Appellant at 31. L&I argues that this interpretation is crucial for providing the substantive benefits of the WFCA to employees in Masserant's situation. *Id*. at 47-48.

AA, in contrast, argues that the choice of leave provision means that if a flight attendant's prescheduled vacation coincides with the family care need, then that flight attendant can use those scheduled vacation days or sick days for the leave—but only if those days are available for use under the terms of the CBA. AA's Answer to Br. of Appellant (Answer) at 29-30. AA continues that the WFCA's choice of leave provision bars companies from requiring employees to

No. 100485-1

exhaust one type of leave before tapping into the other. *Id.* at 30. But AA

concludes that the WFCA does no more than that; specifically, it does not silently

excuse the employee from complying with the CBA's other terms. Instead, the

WFCA says that employees "must" comply with the CBA's other terms. *Id.* at 25-

26.

So the question for this court is whether the WFCA's requirement that

employees must comply with all terms of the CBA except for those "relating to the

choice of leave" requires employees to comply with CBA advance scheduling

requirements. RCW 49.12.270(1). The WFCA does not define its phrase "relating

to choice of leave." *Id.* But it does define the related phrase "[S]ick leave or other

paid time off." That phrase is defined as "time *allowed* under the terms of an

appropriate state law, [*CBA*], or employer policy, as applicable, to an employee for

illness, vacation, and personal holiday." RCW 49.12.265(5) (emphasis added).

This definition suggests that "leave" to which an employee is entitled under the

WFCA is "leave" that is already "allowed" under other "terms of . . . the [CBA]."

This language seems to favor AA's approach.

The full context of the statute confirms this. RCW 49.12.270(1) states that

employees taking leave under the WFCA "*must comply with the terms of the*

[*CBA*]" except for terms "relating to the choice of leave." (Emphasis added.) That

makes "choice of leave" a narrow exception to the rule that employees must, in

13

No. 100485-1

general, comply with all terms of the CBA, unless a specific statutory provision relieves them of that obligation. RCW 49.12.270 provides no such specific statutory provision relieving employees of that obligation.

This interpretation is also compelled by RCW 49.12.270's "choice of leave" language in the context of language in related statutes within the WFCA. *Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd.*, 182 Wn.2d 342, 350, 340 P.3d 849 (2015) (our court considers "the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole" (citing *Campbell & Gwinn, LLC*, 146 Wn.2d at 9-10)). The most important related statute is RCW 49.12.290. It states, "Nothing in RCW 49.12.270 through RCW 49.12.295 shall be construed to reduce *any* provision in a [CBA]." RCW 49.12.290 (emphasis added). This statute clarifies what the text of RCW 49.12.270 suggests: all the terms of the CBA are mandatory and the WFCA should not be interpreted to "reduce" "any" of them (other than the choice of leave terms expressly displaced). "Any" is inclusive; it means "all," not just some. *State v. Westling*, 145 Wn.2d 607, 612, 40 P.3d 669 (2002) ("'any'" means "'every'" and "'all'"); *any,* MERRIAM-WEBSTER ONLINE DICTIONARY (last visited June 23, 2023) https://www.merriam-webster.com/dictionary/any (any defined as "every" or "all"). If the legislature wanted to "reduce" the mandatory

14

No. 100485-1

nature of advance scheduling requirements, it could have used far less categorical terms.

We therefore hold that the text of RCW 49.12.270, when considered in context of related statutes, shows that the legislature intended to alter only CBA choice of leave provisions and not "any [other CBA] provision." RCW 49.12.290. The WFCA therefore alters the AA-AFA CBA's choice of leave provision, but not its advance scheduling provision.

L&I next argues that RCW 49.12.270's intent to allow employees to take time off for certain family "emergency condition[s]" would be rendered meaningless if the CBA's advance scheduling requirements survived. Br. of Appellant at 35-36.

We disagree. That portion of the statute states:

> (1)   If, under the terms of a [CBA] or employer policy applicable to an employee, the employee is entitled to sick leave or other paid time off, then an employer shall allow an employee to use any or all of the employee's choice of sick leave or other paid time off to care for: (a) A child of the employee with a health condition that requires treatment or supervision; or (b) a spouse, parent, parent-in-law, or grandparent of the employee who has a serious health condition *or an emergency condition*.

RCW 49.12.270(1). The "emergency condition" language appears only in RCW 49.12.270(1)(b), concerning leave care for family members other than children. It does not appear in subsection (a), concerning leave to care for one's child. Subsection (a) requires employers to accommodate employee leave to care for their

15

No. 100485-1

own child in many different circumstances. Subsection (b) is more limited. It requires employers to accommodate employee leave for a spouse, parent, parent-in-law, or grandparent, but *only if* the health condition is "serious" or an "emergency." The emergency condition language is therefore not rendered meaningless by respecting the CBA's advance scheduling terms; "emergency condition" still limits the type of WFCA leave available to care for family members other than children.

Again, the text of RCW 49.12.270 shows a legislative intent to enforce the terms of the CBA, with one specific exception for choice of leave terms. We cannot interpret this language to make an exception for CBA advance scheduling terms, also.

This resolves the issue. The parties and the dissent, however, also focus on legislative history and agency deference. We therefore address those issues.

III. The legislative history of the WFCA sheds no additional light on whether the legislature intended to preserve unmentioned terms of the CBA

Each party argues that the statute is clear and unambiguous, so the court should not resort to legislative history. Br. of Appellant at 58-60; Answer at 41-51. Each party nevertheless continues that the legislative history favors its position. Br. of Appellant at 58-60; Answer at 41-51. In particular, the parties look to prior

16

No. 100485-1

drafts of the WFCA and proposed amendments to support their interpretation of the legislative history. Br. of Appellant at 58-60; Answer at 41-51.

When examining legislative history, this court may look to sequential drafts of a bill to try to discern legislative intent, but sequential drafts are not determinative on this point. *See Lewis v. Dep't of Licensing*, 157 Wn.2d 446, 470, 139 P.3d 1078 (2006) (using sequential drafts to discern intent (citing *State v. Martin*, 94 Wn.2d 1, 19, 614 P.2d 164 (1980) (Horowitz, J., specially concurring))); *Hama Hama Co. v. Shorelines Hr'gs Bd*., 85 Wn.2d 441, 449, 536 P.2d 157 (1975) (cautioning against "over-emphasis and over-reliance upon the fact or happenstance of successive drafts as an *absolute* determinant, rule, or tool for interpreting a statute"). Additionally, "when a material change is made in the wording of a statute, a change in legislative purpose must be presumed." *WR Enters., Inc. v. Dep't of Lab. & Indus*., 147 Wn.2d 213, 222, 53 P.3d 504 (2002) (citing *Graffell v. Honeysuckle*, 30 Wn.2d 390, 399, 191 P.2d 858 (1948)).

The WFCA was enacted in 1988 with the difficult goal of balancing "the needs of families" with the "the demands of the workplace to promote family stability and economic security." LAWS OF 1988, ch. 236, § 1. The legislature found that "it is in the public interest for employers to accommodate employees by providing reasonable leaves from work for family reasons." *Id.* The WFCA was intended to set a "minimum standard for family care." *Id.*

No. 100485-1

The relevant 1988 version of the WFCA stated:

An employer shall allow an employee to use the employee's accrued sick leave to care for a child of the employee under the age of eighteen with a health condition that requires treatment or supervision. Use of leave other than accrued sick leave to care for a child under the circumstances described in this section shall be governed by the terms of the appropriate [CBA] or employer policy, as applicable.

LAWS OF 1988, ch. 236, § 3.

The statute was substantially amended in 2002 to its current form:

(1)    If, under the terms of a [CBA] or employer policy applicable to an employee, the employee is entitled to sick leave or other paid time off, then an employer shall allow an employee to use any or all of the employee's ((accrued)) choice of sick leave or other paid time off to care for: (a) A child of the employee ((under the age of eighteen)) with a health condition that requires treatment or supervision; or (b) a spouse, parent, parent-in-law, or grandparent of the employee who has a serious health condition or an emergency condition. An employee may not take advance leave until it has been earned. The employee taking leave under the circumstances described in this section must comply with the terms of the [CBA] or employer policy applicable to the leave, except for any terms relating to the choice of leave.

SUBSTITUTE S.B. 6426, 57th Leg., Reg. Sess. (Wash. 2002) (as passed by the legislature).[2] The legislature added the first and last sentences, struck the term "accrued," included "other paid time off," and expanded coverage for family members other than children.

---

[2] https://lawfilesext.leg.wa.gov/biennium/2001-02/Pdf/Bills/Senate%20Passed%20Legislature/6426-S.PL.pdf?q=20220908101517

18

No. 100485-1

During consideration of the 2002 amendment, the senate bill that was sent to the house for consideration added "or other paid time off," coverage for a "spouse, parent, parent-in-law, or grandparent," and the definition of "sick leave or other paid time off." *Id.*[3]  The senate bill report reflects that there had been "an increased concern in the workplace for how to deal with employees with family situations that demand extra attention." S.B. REP. ON SUBSTITUTE S.B. 6426, at 1, 57th Leg., Reg. Sess. (Wash. 2002).[4]

The bill was discussed and several amendments to the bill were proposed and rejected.[5] The house then agreed on the final version of the bill, which was

---

[3] https://lawfilesext.leg.wa.gov/biennium/2001-02/Pdf/Bills/Senate%20Bills/6426-S.pdf?q=20220908101517

[4] https://lawfilesext.leg.wa.gov/biennium/2001-02/Pdf/Bills%20Reports/6426-S.SBR.pdf?q=20230623153236

[5] L&I points to several amendments that were proposed but rejected that included language explicitly providing that employees must comply with advance notice and scheduling requirements. L&I relies on these rejected amendments to show that the legislature intended to bar the use of advance scheduling requirements for an employee to take leave under the WFCA. Br. of Appellant at 58-59. It is debatable under our case law whether we can look to proposed but *rejected* amendments to discern legislative intent. *See State v. Martin*, 94 Wn.2d at 19 (Horowitz, J., specially concurring) (using rejected amendments to discern legislative intent); *State ex rel. Fair v. Hamilton*, 92 Wash. 347, 352, 159 P. 379 (1916) (looking to proposed and *accepted* amendments to discern legislative intent); *Spokane County Health Dist. v. Brockett*, 120 Wn.2d 140, 153, 839 P.2d 324 (1992) (refusing to consider rejected amendment: "when the Legislature rejects a proposed amendment, as it did here, we will not speculate as to the reason for the rejection"). We need not resolve that issue here because the rejected amendments could just as plausibly be interpreted to show that the legislature knew about advance scheduling CBA terms and employer policies and still chose language that allowed employers to enforce all of them, without excluding advance scheduling provisions.

19

No. 100485-1

passed by the senate without amendment. SUBSTITUTE H.B. 2364, 57th Leg., Reg. Sess. (Wash. 2002).[6]

L&I and AA interpret the legislative history differently. L&I argues that the new language clearly showed an attempt to expand workers' access to leave—it expanded the family members whose care would trigger the right to family leave, added "other paid time off" to the types of leave the employee could take, and added the very inclusive "any and all" language. Appellant's Reply Br. at 20-25. L&I continues that the bill reflected a compromise between employers and employees but that employers did not get everything they wanted—specifically, employers did not get explicit language retaining the effectiveness of advance notice requirements. *Id.* at 23-25. AA, on the other hand, argues that the legislature explicitly added several provisions preserving all other CBA terms besides choice of leave—and the legislature knew that advance scheduling requirements constituted just such an other CBA term. Answer at 45-49. AA continues that the legislature knew that advance notice terms were common in CBAs and declined to bar such terms. *Id.* at 46-47.

Both arguments are plausible. Neither is determinative, because they are both based on plausible hindsight narratives about the legislature's collective

---

[6] https://lawfilesext.leg.wa.gov/biennium/2001-02/Pdf/Bills/House%20Bills/2364-S.pdf?q=20220908104815

20

No. 100485-1

intent. In other words, legislative history is totally inconclusive. It does not undermine our plain language interpretation.

IV. L&I's interpretation of whether RCW 49.12.270 displaced mandatory CBA advance scheduling terms shifted dramatically over the course of this litigation toward favoring L&I's litigation position. That interpretation is not entitled to deference

L&I argues we should defer to its agency interpretation of the WFCA. L&I cites its current "Frequently Asked Questions" publication,[7] in particular, as worthy of deference. Br. of Appellant at 13-17 (citing Wash. L&I, Admin. Policy ES.C.10); CP at 276-81, 271-72.

The extent of deference that this court gives to administrative interpretations of statutes is a matter of ongoing debate. *Carranza v. Dovex Fruit Co*., 190 Wn.2d 612, 624-25, 416 P.3d 1205 (2018) ("While the level of deference owed to regulations is an issue of ongoing debate, administrative policies do not even have the force of regulations, and deference to such policies is inappropriate because '[t]his court has the ultimate authority to interpret a statute.'" (alteration in original) (quoting *Bostain v. Food Express, Inc*., 159 Wn.2d 700, 716, 153 P.3d 846 (2007))); *contra Brady v. Autozone Stores, Inc*., 188 Wn.2d 576, 581, 397 P.3d 120 (2017) (our court "gives a 'high level of deference to an agency's interpretation of its regulations' based on the agency's expertise and insight gained

---

[7] https://lni.wa.gov/workers-rights/_docs/esc10.pdf [https://perma.cc/8E9C-5RWL]

21

No. 100485-1

from administering the regulation" (quoting *Silverstreak, Inc. v. Dep't of Lab. & Indus.*, 159 Wn.2d 868, 885, 154 P.3d 891 (2007) (plurality opinion))).

But it is undisputed that we will never defer to ad hoc agency determinations adopted during the course of litigation on the very topic of that litigation. We will only consider deferring to an agency's "uniformly applied interpretation." *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 815, 828 P.2d 549 (1992) (agency cannot "bootstrap a legal argument into the place of agency interpretation"); *Sleasman v. City of Lacey*, 159 Wn.2d 639, 646, 151 P.3d 990 (2007) (agency interpretation not given deference because "claimed definition was not part of a pattern of past enforcement, but a by-product of current litigation").

Here, L&I's administrative interpretations of the WFCA changed in 2014, during the course of this litigation. AA asserts that L&I made this change during the course of this litigation to gain a tactical advantage. Answer at 52. AA is correct about the timing. In 2009, L&I's administrative interpretation stated:

> **17. What is meant by the provision that says the employer must allow an employee to use any and all of the employee's choice of sick leave or other paid time off to care for a sick family member?**
>
> Employees must have access to any available sick leave or other paid time off to care for a sick family member. If employees have access to paid leave for themselves, then they must have full access to any and all of this leave to care for a sick family member. This law directs the employer to allow employees the choice of available leave to care for a sick family member. Employers must now allow use of sick leave

22

No. 100485-1

and other paid time off to care for a sick family member even if a pre-existing [CBA] or employer policy prohibited such use. *However, provisions of [CBAs] or employer policies regarding the accumulation of leave and other provisions concerning the use of leave, such as medical certification and advance scheduling of vacation may still be applied.*

CP at 270, 279-80 (emphasis added).

L&I changed this language in 2014, after this litigation had already started, to state:

**10. What is meant by the provision in RCW 49.12.270 that says the employer must allow an employee to use "any or all of the employee's choice of sick leave or other paid time off" to care for a sick family member?**

Employees must have access to any earned sick leave or other paid time off to care for a sick family member. If employees have access to paid leave for any purpose then they must have full access to any and all of this paid leave to care for a sick family member. The law directs employers to allow employees their choice of earned paid leave to care for a sick family member, *even if the use of that leave is not normally allowed for the employees' own illnesses.*

*Id.* at 272 (emphasis added).

L&I argues that despite the curious timing, it made this change as a result of a regular review of its guidance. *Id.* at 271; Br. of Appellant at 65. L&I argues that the 2009 guidance was meant to state that employers "are permitted to establish an advance[] scheduling policy generally, but such a policy cannot bar the employee from using vacation leave for [WFCA] purposes without violating the choice of

23

No. 100485-1

leave provision." CP at 270-71. In other words, it essentially argues that there was no change from 2009 to 2014.

We disagree. The 2009 interpretation seemed to allow employers to enforce CBA-required advance scheduling requirements. The 2014 interpretation seems to take the opposite approach. The change occurred in the midst of this lengthy litigation. L&I has not shown that its 2014 position was a uniformly applied "pattern of past enforcement." We therefore decline to defer to that 2014 agency guidance. *See Sleasman*, 159 Wn.2d at 646.

V.     The Director's Order is supported by substantial evidence

AA also brings a challenge under RCW 34.05.570(3)(e). It argues that the Director's Order was "not supported by evidence that is substantial when viewed in light of the whole record before the court." RCW 34.05.570(3)(e); Answer at 67-68.

"Substantial evidence is that which is sufficient 'to persuade a fair-minded person of the truth of the declared premises.'" *Ames v. Dep't of Health*, 166 Wn.2d 255, 261, 208 P.3d 549 (2009) (internal quotation marks omitted) (quoting *Heinmiller v. Dep't of Health*, 127 Wn.2d 595, 607, 903 P.2d 433, 909 P.2d 1294 (1995)).

AA challenges the Director Order's finding of fact 5.4:

Once scheduled, these vacation days may be "exchanged" between flight attendants, used for personal medical leaves of absence, used for

24

> maternity-related leaves of absence, used for extended bereavement leave, or "cashed out," with the vacation days kept on calendar, but converted to unpaid time off. Once her vacation leave was scheduled, Masserant could choose to receive payment of any or all of the vacation leave benefit with seven days' notice (taking the pre-scheduled vacation time off as unpaid leave).

CP at 3299. AA also challenges the Director Order's related conclusion of law 12, which held that Masserant was "entitled" to her vacation leave because she could cash out her vacation leave or use her vacation leave for medical leaves of absence, maternity-related leaves, and extended bereavement leaves. *Id.* at 3301.

AA argues that this finding of fact is unsupported by substantial evidence because its other listed types of leaves are all unpaid and preapproved—and, hence, they are irrelevant to the interpretive question presented. Answer at 67. Additionally, AA argues that the director erred because flight attendants cannot reschedule "days" off but can only take cash out pay early while the vacation days remain on the schedule. *Id.*

AA might have a point: vacation is not determined by "days" but rather by TFPs. But the director's misstatement is about legal analysis, not evidentiary support. There is substantial evidence in the record to support the Director's Order, and AA's challenge under RCW 34.05.570(3)(e) fails.

CONCLUSION

RCW 49.12.270, when read in full and in the context of related statutes, preserves all the terms of a CBA—with one narrow, explicit exception. That

25

No. 100485-1

exception is for employee choice of leave. RCW 49.12.270 does not make an exception for anything else, and RCW 49.12.290 explicitly bars any interpretation of RCW 49.12.270 that would "reduce *any* [CBA] provision" other than its choice of leave provision. As a result, we cannot "reduce" or ignore the AA-AFA CBA's advance scheduling provision.

We therefore affirm the decision of the trial court.

_____
Gordon McCloud, J.

WE CONCUR:

_____
Stephens, J.

_____
Johnson, J.

_____
Madsen, J.

_____

_____
Whitener, J.

26

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Alaska Airlines v. Dep't of Labor & Indus.*, No. 100485-1
(Montoya-Lewis, J., dissenting)

No. 100485-1

MONTOYA-LEWIS, J. (dissenting)—When the legislature enacted the

Washington family care act (WFCA), RCW 49.12.265-.295, it intended to ensure,

in part, that employees could freely take sick leave or other paid time off when the

child of an employee needed supervision as a result of a health condition.

Employees had to be entitled to that leave, but if they had the leave, the intent of

the legislature was to ensure that they could take that leave to care for sick

children[1].  Alaska Airlines asks us to read into the WFCA in a highly technical

and, in my view, tortured manner of this rather simple provision intended to allow

parents to take time to care for sick children.[2]  The premise of the WFCA matters

in this case because it is intended to ensure that the full lives of employees be

---

[1] When it enacted the WFCA in 1988, the legislature included a statement of legislative findings:
"The legislature recognizes the changing nature of the workforce brought about by increasing numbers of working mothers, single parent households, and dual career families.  The legislature finds that the needs of families must be balanced with the demands of the workplace to promote family stability and economic security. The legislature further finds that it is in the public interest for employers to accommodate employees by providing reasonable leaves from work for family reasons.  In order to promote family stability, economic security, and the public interest, the legislature hereby establishes a minimum standard for family care.  Nothing contained in this act shall prohibit any employer from establishing family care standards more generous than the minimum standards set forth in this act." LAWS OF 1988, ch. 236, § 1; *State v. Van Wolvelaere*, 195 Wn.2d 597, 607, 461 P.3d 1173 (2020) (legislative findings and intent "'serve[] as an important guide in understanding the intended effect of operative sections'" (alteration in original) (quoting *Hartman v. Wash. State Game Comm'n*, 85 Wn.2d 176, 179, 532 P.2d 614 (1975)).
[2] The WFCA has other provisions, but I will focus on the one at issue here.

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

recognized by employers so that employees can keep their jobs and care for their families without fear of losing their jobs, their paychecks, or their job status when an unexpected illness occurs. While there is a Collective Bargaining Agreement (CBA) at play in this case, I read the WFCA as setting a baseline set of requirements that any CBA must recognize; I do not think that a CBA can release an employer from its responsibilities under Washington law when it comes to provisions in the law designed to ensure children can be cared for by their parents when a crisis (or serious illness) occurs.

As RCW 49.12.270(1) provides, an employee must comply with the terms of the CBA when taking leave to care for a child: "The employee taking leave under the circumstances described in this section must comply with the terms of the [CBA] or employee policy applicable to the leave, *except for any terms relating to choice of leave.*" (Emphasis added.) The manner that the employer sets out for the employee to claim the leave is left up to the terms of the CBA. What is not left up to the CBA is the kind of leave the employee may use. *Id.*

Alaska Airlines argues that the WFCA applies only when an employee is "entitled" to leave. They argue that the first line of the WFCA controls here: "If, under the terms of a [CBA] or employer policy applicable to an employee, the employee is entitled to sick leave or other paid time off, then an employer shall allow an employee to use any or all of the employee's choice of sick leave or other

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

paid time off." RCW 49.12.270(1). Alaska Airlines argues that under the scenario presented in this case, the employee, Laura Masserant, was not entitled to the leave and was therefore subject to the consequences applied to employees who take leave when they are not entitled to it.

Reading the statute as Alaska Airlines does would result in the nullification of the statute's purpose. The purpose of the statute is to allow employees to access all leave they may have to care for a sick child; Alaska Airlines argues, and the majority agrees, that employees must have that leave prescheduled in accordance with the employer's scheduling requirements under the CBA. Simply put, this reading does not make sense when the purpose of the WFCA is to ensure employees can use any and all of their leave for "a serious health condition or an emergency condition." RCW 49.12.270(1). *This language shows that the legislature intended to account for unplanned health conditions for emergencies or serious illnesses that are, by their nature, unscheduled.* Alaska Airlines argues that their reading of the statute does make sense when read as focusing on the aspect of the WFCA that allows for the employee to take their choice of leave when caring for a family member with a serious illness; an employee could plan that leave around the time frame when they "earn" their leave. But that reading would render half of the statute meaningless. If the legislature intended to ensure employees could take any of their leave for caring only for a family member with a

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

serious illness, and not for sick children experiencing emergencies, then the statute should so indicate and would by not referencing emergencies whatsoever. We read statutes as a whole, not in pieces, *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 10-12, 43 P.3d 4 (2002), and I struggle to understand how the majority's reading of the statute harmonizes all the provisions of the statute.

The majority argues that subsection (1)(b) of the statute should be read to apply only to emergency conditions of a "spouse, parent, parent-in-law, or grandparent of the employee who has a serious health condition or an emergency condition," but not the children of employees. RCW 49.12.270. The majority states that the disjunctive use of "or" means that the phrase "or an emergency condition" applies to family members other than children and that it guarantees these choice of leave provisions only for children who have "a health condition that requires treatment or supervision." Majority at 15-16. I do not read the statute that way; not only is that a strained reading, but it also seems to undercut the purpose of the Washington family cares act. Even with the majority's reading, however, the parents of sick children are still covered, since an emergency condition would, by its very nature, require the parents' supervision, RCW 49.12.270(1)(a), and is, therefore, covered by the statute.

Alaska Airlines' position that Masserant could use her leave for the care of her sick child only if that child's sickness falls on previously scheduled days off

4

*Alaska Airlines v. Dep't of Labor & Indus.*, No. 100485-1
(Montoya-Lewis, J., dissenting)

effectively nullifies the protections of the WFCA. Rather than allowing the CBA and the WFCA to be read in concert, it argues that the CBA controls entirely and the only way in which employees are protected is when their children fall ill during previously scheduled vacation days.

While that is a possible reading of the CBA and the WCFA, and it is the reading the majority supports, such a reading ignores the reality of family life. Children (or other family members, for that matter) rarely become sick on a schedule. If they did, there would be no need for employee protections like the statute we analyze today. It is not the nature of any "serious health condition or an emergency condition" to occur during a time that is convenient or a time where time off is prescheduled. Were life to work in that manner, we would never need the protections of legislative acts like this one to protect employees from employers who refuse to allow their employees to be by the bedside of their sick child or family member.

The CBA here goes into detail regarding how employees earn leave and how they schedule that leave. The award and use of vacation days depends on seniority and scheduling, and that structure is reasonable because Alaska Airlines needs to be able to predict who will be working and when in order to ensure its scheduled flights have the appropriate coverage. Such structured scheduling is a necessity for many employers, and ensuring that the employer knows who will be coming in and

*Alaska Airlines v. Dep't of Labor & Indus.*, No. 100485-1
(Montoya-Lewis, J., dissenting)

when is a critical part of the functioning of a business.  But sick children and

family members and their related care do not operate in that manner, and the

WFCA attempts to recognize that and require employers to provide employees

with the ability to use their leave when life takes a calamitous turn.  We should

recognize the WFCA's attempt to support employees during those times and read

the WFCA as guaranteeing the employees' ability to use their leave in any manner

they choose when their family members' situation so requires.  This is not a statute

intended for a technical, narrow reading when reading it as a whole and

harmonizing it with the CBA results in the obvious protections the statute intended

to enact.

Therefore, I respectfully dissent.

_____
Montoya-Lewis, J.

_____
González, C.J.

_____
Owens, J.

_____
Yu, J.

6